[No. 8,549.  Department One.—February 11, 1885.]

## THOMAS BAILEY, RESPONDENT, *v.* BENJAMIN RICHARDSON ET AL., APPELLANTS.

LANDLORD AND TENANT—LEASE—COVENANT RUNNING WITH LAND—IMPROVEMENTS.—A covenant in a lease for the erection, by the lessee, of improvements on the demised premises, and for the purchase thereof by the lessor at the expiration of the term, runs with the land, and is binding on the assignee of the lessor, if such covenant was entered into by the parties. to the lease for themselves and their assigns.  In such case, the assignee is liable only for breaches of the covenant occurring after he has acquired the estate, and before he has parted with it, or ceased to enjoy its benefits.

ID.—ASSIGNMENT TO LESSOR—MERGER.—Where a lessee, after sub-letting, makes an assignment of the lease to the lessor, who receives and collects. from the sub-lessee the rent reserved in the sub-lease, no merger is created.  The lessor comes in as assignee of the reversion, and not as owner of the fee.

NEW TRIAL—SURPRISE—PRAYER—CONTINUANCE.—Being misled by the prayer of the complaint, conceding it to constitute a surprise, will not warrant a new trial, if the party moving could have relieved himself of the consequences of the surprise by applying for a continuance, but failed. to make such application.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

Action to enforce a covenant in a lease. The facts are sufficiently stated in the opinion of the court.

*George D. Shadburne*, for Appellants.

*E. D. Sawyer*, for Respondent.

Whatever remedies the lessee of real estate has against his immediate lessor, for the breach of any agreement in the lease, he may have against the assigns of the lessor. (Civil Code, § 823 ; *Farrington* v. *Kimball*, 126 Mass. 402.) The assignment of the sub-lease by Dore to Richardson, and the payment of rent for the premises by Bailey, created a privity of estate between Richardson and Bailey. (*Salisbury* v. *Shirley*, 66 Cal. 223.)

The covenant to pay the value of the buildings, at the termination of the lease, runs with the land. (Civil Code, §§ 1460, 1462; Rawle on Covenants, 334; Spencer's Case, 1 Sm. Lead. Cas. 116.) The doctrine of merger is not favored, and will not be permitted when the requirements of justice demand it should not take place. (*Cliff* v. *White*, 12 N. Y. 19 ; *Bascom* v. *Smith*, 34 N. Y. 320 ; *People* v. *Dudley*, 58 N. Y. 331 ; *Wilcox* v. *Davis*, 4 Minn. 197.) Where there is an intermediate estate, there can be no merger, either at law or equity. (*Cook* v. *Brightly*, 46 Pa. St. 439 ; *Clark* v. *Clark*, 56 N. H. 113 ; *Bell* v. *Tenny*, 29 Ohio St. 240 ; *Sahler* v. *Signer*, 44 Barb. 606 ; *Flagg* v. *Flagg*, 16 Gray, 178.)

McKINSTRY, J.—The court below found :

"That on the first day of September, 1868, the defendant, Benjamin Richardson, leased, by his written indenture of lease, South Beach and Water Block sixteen, of the city and county of San Francisco, to Henry F. Williams for a term of thirteen years. That said indenture of lease was by various mesne assignments vested in and belonged to Maurice Dore, who then entered into possession of said land under said lease, and thereafter paid said Richardson rent, stipulated in said lease, up to May 1, 1879. On the second day of February, 1874, the said Maurice Dore leased to plaintiff and James Hartley that part of block sixteen which is two hundred feet by one hundred and forty feet, on the corner of King and Fifth streets, for the term of

seven years from January 1, 1874. That a copy of said lease is attached to the complaint as Exhibit A of this action. That by the terms of said lease, of which Exhibit A is a copy, the lessor, his heirs or assigns, covenanted with the lessees, their heirs or assigns, that upon the expiration of said lease all buildings placed upon said premises last above described and more particularly described in said lease, of which Exhibit A is a copy, by said lessees, during the term of said lease, and which should be standing thereon at the expiration of said lease, should be appraised by appraisers to be appointed by said lessor and lessees, each of whom was to appoint one appraiser ; and in case they could not agree, then the two appraisers should choose a third appraiser, and the report of a majority of said appraisers should be the appraised value of said building ; and the lessor, his heirs, executors, and assigns, covenanted to pay within thirty days after said appraisement to said lessees, their heirs, executors, or assigns, two-thirds of said appraised value of said buildings.

" That after execution of said lease, of which Exhibit A is a copy, and during the year 1874, the said Bailey and Hartley, lessees, erected on the premises described in Exhibit A a fire-proof brick building covering the entire lot, at a cost of fourteen thousand two hundred and twenty-five dollars, which said building was on said lot at the expiration of said lease, Exhibit A, is still there in good condition, and is now of the value of ten thousand dollars. That on or about November 9, 1874, the said Hartley sold, assigned, and transferred to said Bailey, the plaintiff, all his interest in said lease, Exhibit A, and said building. That on or about the first day of May, 1879, the defendant Richardson purchased of said Dore the lease first described in the complaint, and the lease of which Exhibit A is a copy, together with the property and estate created thereby, and paid said Dore for said leases, and other sub-leases, about twelve thousand dollars, the purchase price thereof ; and said defendant Richardson thereby became subrogated to all the rights, conditions, covenants and obligations of said Dore. That the defendant Richardson, for the purpose of concealing the purchase of said lease, of which Exhibit A is a copy, from said plaintiff, and defrauding him out of the two-thirds value of said build-

ing, took the assignment of said lease, as well as the assignment of all other leases affecting said premises, to one William P. Lean, who then was a policeman of said city and county, a man without any property, and a mere instrument of said Richardson. That the said Richardson caused the said assignment of the lease of September 1, 1868, to said Lean, to be recorded in the recorder's office of said city and county, about May 1, 1879, and thereupon took a secret assignment to himself. That said Richardson concealed from said plaintiff the fact that he was the real owner of said leases, and he held out that said Lean was the real owner. That, from and including May 1, 1879, to the thirty-first day of December, 1880, the termination of said lease, Exhibit A, said Bailey paid the monthly rent of said premises occupied by him to said Richardson, and said Bailey kept all the covenants and conditions on his part. That previous to December 31, 1880, said Bailey notified said Richardson that he would, on said last-named day, at 3 o'clock P. M., surrender possession of said premises then occupied by him to said Richardson, and he did yield up and surrender said premises at last-named time. That on or about the fifth day of January, 1881, said Bailey notified said Richardson that he had appointed an appraiser, in accordance with the provisions of lease, Exhibit A, to appraise the said building, and requested said Richardson to appoint an appraiser. That said Richardson neglected and refused to appoint an appraiser. That by such neglect and refusal aforesaid the plaintiff was prevented from obtaining an appraisement of said building. That defendant Lean did not, on the first day of May, 1879, nor at any other time, procure an assignment to him of lease first mentioned in the complaint, or together with all the right, title, and interest of Maurice Dore in or to the premises leased; but the said Richardson did procure said assignment to the said Lean, as hereinbefore stated, as a cover for the purposes hereinbefore stated. That the defendant Lean never took or remained in the possession of said premises described in said lease, or any part thereof, but the same was taken possession of December 31, 1880, by said Richardson, who still remains in possession thereof. That said Lean did not remain in possession of said premises, or any part thereof, until February 23, 1881, or at all, nor was he

ejected therefrom under a writ of possession sued out in the
case of *Benjamin Richardson* v. *Wm. P. Lean.* That such an
action was instituted in the Superior Court of the city and coun-
ty of San Francisco, and said lease declared forfeited; but the
same was done for the sole purpose of concealing the aforesaid
fraud between said Richardson and Lean. That said plaintiff,
at the institution of this action, and up to the time of the sur-
render of the said premises described in Exhibit A, was the sole
owner of said building on said premises, and the same has not
been sold for taxes."

The findings determine issues made by the pleadings, and
there was evidence to justify them.

It is contended by appellants that the assignment by Dore of
the two leases, and of his rights under them, if made at all, was
made to Lean, and not to Richardson. The complaint charges,
and the court below found, that the assignment by Dore of the
under lease, and of his rights as lessor, was made actually to
defendant Richardson, but in form to defendant Lean—an irre-
sponsible person—for the purpose of depriving plaintiff of the
benefit of his covenant, and to avoid the payment by Richardson
of the two-thirds of the value, etc. The evidence sustained the
finding. The court—clothed with the jurisdiction of a court of
equity—having found that Richardson was the real assignee,
was empowered to proceed to a judgment in favor of plaintiff
upon the covenant. Treating Richardson as the assignee of
Dore's reversion and of the under-lease, and of Dore's interests
therein, there can be no doubt that the covenant (requiring pay-
ment of two-thirds of the value of any building, etc.) is bind-
ing upon him, since the assignment was made prior to the
breach of the covenant, and the covenant was entered into by
the parties to the under-lease, "for themselves, their heirs, ex-
ecutors, administrators, and assigns." (*Spencer's Case,* 5 Rep.
16; *Lametti* v. *Anderson,* 6 Cow. 307; *Thompson* v. *Rose,* 8
Cow. 269; *Coffin* v. *Talman,* 8 N. Y. 465; 1 Washb. Real Prop.
331; 2 Rob. Pr. 94; Tayl. Landl. & Ten. 260.)

The statute is declaratory of the rule. Section 1464 of the
Civil Code reads: " A covenant for the addition of some new
thing to real property, or for the direct benefit of some part of
the property not then in existence or annexed thereto, when

contained in a grant of an estate in such property, and made by the covenantor expressly for his- assigns, or to the assigns of the covenantee, runs with the land so far only- as the assigns thus mentioned are concerned."

In such case, the assignee is liable only for breaches of the covenant occurring after he has acquired the estate, and before he has parted with it, or ceased to enjoy its benefits. (Civil Code, § 1466.)

It is urged by appellants that defendant Richardson is not bound by the covenants of the sub-lease because he came in under an elder and superior estate. In *Whitton* v. *Peacock*, 2 Bing. N. C. 412, it was held that where the lessor had only an equity, the assignee of the lessor did not take the benefit of certain cov-enants of the lease. At common law, no such right passed to the assignee of the reversion, and the English statute (32 Henry VIII., C. 34), which enables the assignee of the reversion to sue on contracts made by his predecessor, conferred that right only on the assignees of the legal title. (See argument of Whightman, p. 419.) But the term of Dore was a legal estate, and, as we have seen, section 1464 of the Civil Code applies to grants of any estate. By section 823 of the same code, it is provided : " Whatever remedies the lessee of any real property may have-against his immediate lessor for the breach of any agreement in the lease, he may have against the assigns of the lessor," etc.

In *Chaworth* v. *Phillips*, Moore, 876, *fuit resolve, que si un lease soit fait sur-condition destre void si 10l. ne soit pay al un certaine jour, le grantee del reversion n'entera pur tiel condition quia est collateral. Resolve auri que si un lessee pur 20 ans fait lease pur 10 ans sur ascu condition, et puis le lessee pur 20 ans surrender al cestuy en reversion, que cestuy en reversion ne prendra benefit del condition, quia il est eins dun auter estate paramount.*

It may be conceded that by our law the merger of the term of the original lessee in the estate of his lessor would not render the latter liable on the covenants of the under-lease. There is no privity of estate or contract between an original lessor and a sub-tenant, and such privity would not be created merely by the surrender of the original tenant—a matter between him and his lessor. A tenant may surrender his estate to his landlord, but

if he have, since its commencement, created some minor interest out of it, or have made an under-lease, he cannot, by surrendering, destroy the charge or affect the estate of the under-lessee. (1 Washb. Real. Prop. 360, and cases cited in note.) Although the tenant cannot prejudice the interest of the under-lessee, yet he will lose the rent he has reserved upon the under-lease, for the rent is incident to the reversion; nor can the surrenderee have it, for, though the reversion to which it was incident has been conveyed to him, yet, as soon as it was so conveyed, it merged in the greater reversion; so that the consequence is, that neither the surrenderor nor surrenderee being entitled to the rent, the under-lessee holds without payment of any rent at all, excepting where the contrary has been expressly provided by statute. In England, it is now provided by statute (8 & 9 Vict. C. 106, § 9), that when the reversion expectant on a lease of any tenements or hereditaments, etc., is surrendered, or merges, the estate which, for the time being, confers, as against the tenant under the lease, the next vested right to the premises, is to be deemed the reversion expectant on the lease, to the extent and for the purpose of preserving such incidents to and obligations on the reversion as, but for the surrender and merger, would have subsisted. (Smith's Landl. and Ten. 231, 232, and note.) We know of no provision of the codes of this state which has the effect of the statute referred to above.

But here defendant Richardson took a formal assignment of the reversionary interest of his lessee, and also an assignment of the sub-lease, and of the rights of Dore—the assignee of the original lessee—thereunder. The assignment of the estate of the original lessee to Richardson might, as between the parties to that assignment, be held to be a surrender, and a drowning or extinguishment of the original lease. But the court below found that Richardson (in the name of Lean) claimed the benefits of the under-lease, receiving and collecting from plaintiff the rents therein reserved. Under these circumstances, the court. was justified in finding that Richardson came in as assignee of the reversion of plaintiff's lessor, and not as owner of the fee. There was no merger, because he elected to keep the two estates separate. Claiming the benefits of Dore's contract, he is estopped from denying that he has succeeded to his responsibilities.

It is contended the judgment should be reversed, because appellants were taken by surprise at the trial; that in the prayer of plaintiff's complaint he asks that appraisers be appointed to estimate the value of the building, but the court permitted witnesses to testify to the value. There is a prayer for general relief. When evidence of the value of the building was offered, the objection was taken that such evidence was immaterial. The defendants did not ask for a continuance. The evidence was admissible under the averments of the complaint, and certainly was material. If counsel was misled by the *prayer* (and this can be said to be surprise) he could, so far as appears, have relieved himself of the consequences by an application for such a postponement as would have enabled him to secure the attendance of witnesses to the matter of value. Defendants were not, therefore, entitled to a new trial on the ground of surprise. (*Schellhous* v. *Ball*, 29 Cal. 605.)

Judgment and order affirmed.

McKEE, J., and Ross, J., concurred.

Hearing in Bank denied.