[S. F. No. 5792. In Bank.—January 4, 1913.]

## STANDARD OIL COMPANY (a Corporation), Appellant, v. JOSEPH SLYE et al., Respondents.

LEASE—RECORDING ASSIGNMENT OF UNRECORDED LEASE—NOTICE OF LEASE.—Where there had been several assignments of an unrecorded lease, the recordation of one of the intermediate assignments, the parties thereto being strangers to the record title, did not give notice of the contents of the lease.

ID.—OCCUPATION BY SUBLESSEE—CONSTRUCTIVE NOTICE OF TERMS OF SUBLEASE.—The open and notorious occupancy of oil lands by a sublessee thereof, claiming under a prior sublessee, is in itself sufficient to put on inquiry a corporation which subsequently purchased the land from the lessor and became the assignee of the rights of the intermediate lessees, and to charge it with constructive notice of the terms of the occupant's sublease.

ID.—ATTEMPT TO ACQUIRE INTEREST OF SUBLESSEE—ESTOPPEL—KNOWLEDGE OF RIGHTS.—The fact that such corporation, almost contemporaneously with the assignment of the leasehold interest of the sublessee under whom such occupant claimed, endeavored to acquire his rights, does not operate to estop it from disputing such rights, but is evidence tending to show that it had actual knowledge of the terms of the occupant's sublease.

ID.—COVENANT FOR RENEWAL RUNS WITH LAND.—A covenant in a lease for a renewal thereof is for the direct benefit of the estate granted, within the meaning of section 1462 of the Civil Code, and runs with the land, and is binding upon one holding in privity of estate with the assignee of the lessor.

ID.—ASSIGNEE OF LESSEE—PRIVITY OF ESTATE.—An assignee of the interest of a lessee, by accepting rent from the claimants under a sublease, becomes in privity of estate with them.

ID.—ACQUISITION OF ESTATE OF LESSEE AND LESSOR AFTER SUBLETTING —MERGER.—Where a lessee, after subletting, assigns to a grantee

of the lessor, who collects from the sublessee the rent reserved in the sublease, such grantee comes in as an assignee of the reversion and not as the owner of the fee, there being no merger of the term of the original lessee in the estate of his lessor.

ID.—FAILURE TO DEMAND RENEWAL OF LEASE AFTER LESSOR OBTAINED ESTATE OF LESSEE.—Where a lessee, having a right to a renewal of his lease upon making a demand therefor, executes a sublease, the terms of which did not require the sublessee to make such demand, and afterward assigns the lease to a grantee of the lessor, the sublessee does not forfeit his right to a renewal by a failure of the assignee of the lessee to demand a renewal from itself as owner of the fee.

ID.—LEASE OF MINING GROUND BY CORPORATION—NONRATIFICATION BY STOCKHOLDERS—REPEAL OF STATUTE REQUIRING RATIFICATION—SUBSEQUENT ACTS VALIDATING LEASE—ESTOPPEL.—A mining corporation, which executed a lease of a part of its mining ground at a time when the statute (Stats. 1897, p. 96), was in force requiring such a lease to be ratified by its stockholders, and which, after the repeal of such statute in 1905 (Stats. 1905, p. 74), treated the lease as valid and collected the rent reserved thereby for a period of years, is estopped to assert the invalidity of the lease due to its nonratification by the stockholders.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, and L. L. Cory, for Appellant.

Sullivan & Sullivan, and Theo. J. Roche, and Frank H. Short, for Respondents.

MELVIN, J.—Appeal from a judgment against plaintiff and from an order denying its motion for a new trial. The action was for the possession of ten acres of land situated in the northeast quarter of section 28, township 19 south, range 15 east, M. D. B. M., in Fresno County, California. Plaintiff's title as owner in fee is undisputed. Defendant, however, claims the right to extract oil from the land until the thirtieth day of September, 1919, paying to plaintiff one-third of the gross product obtained. Defendant claims under a contract from a prior sublessee, the latter in turn

holding under a lessee of plaintiff's grantor of the fee. All parties to the controversy deraigned title from the Hanford Oil Company, a corporation, which had owned all of section 28 above mentioned. On September 30, 1899, Hanford Oil Company leased to S. N. Griffith the northeast quarter of section 28 for a term commencing October 1, 1899, and ending September 30, 1909, the contract providing that Griffith was to form a corporation to assume his obligations under the lease. In accordance with the terms of said lease Griffith organized the "28 Oil Company" and transferred his lease to that corporation. By the said lease the corporation was authorized and empowered to sublet the whole or any part of the land in subdivisions of not less than five acres. The lease also contained this paragraph:

"Said corporation may and shall have the right, privilege and option to demand and receive from the party of the first part at any time after the first day of October, 1907, and before the first day of October, A. D. 1908, a second lease and demise of all the land above described for an additional term of ten years, to commence at the expiration of the term hereby created, upon the same terms, conditions, stipulations and limitations, and for the uses and purposes herein made, agreed upon and set out."

By paragraph 15 of the lease it was provided that under certain conditions the rights of the corporation should cease, but this paragraph also contained the following language:

"Provided that if any part of the said land shall be in the actual possession and occupation of any person under and by virtue of any sublease executed in accordance to the provisions hereof, the term of such person under such sublease and his possession of said part of said land, and his right of possession thereof, shall not terminate, nor be at an end, or be in any manner affected by the foregoing provisions of this clause, numbered fifteen, and the term of such person under such sublease and his possession and right of possession of such part of said land shall immediately cease and determine, and such person shall lose all right to the possession of such part of said land, so held by him, upon failure or refusal by such person to keep any of the stipulations, agreements and covenants of the sublease by which he holds such part of said land, and the party of the first part shall there-

upon be immediately entitled to the possession of all of said land so held by such person.''

On October 31, 1899, 28 Oil Company leased to Independence Oil Company the southwest quarter of the northeast quarter of section 28. This lease required among other things the boring of a well by the Independence Oil Company each year of its term. The duration of the term and the option for a further term of ten years were expressed in the leasing contract in substantially the same words as those employed in the original lease from Hanford Oil Company. This lease also contained language substantially identical with that of paragraph 15 of the original lease from Hanford Oil Company. It was evidently contemplated by both of these leases that the land should be developed at a certain rate per year; that the work of the sublessees should be counted as a part of the necessary development; and that the term of a sublessee was not to cease or determine by reason of any forfeiture by his immediate lessor. A lease was made by Independence Oil Company on July 18, 1902, to W. L. Harper. This is designated by those on both sides of this controversy as the ''Harper lease.'' Defendant Slye appears as the last sublessee under the rights conveyed by the Harper lease. The first paragraph of this lease gave to Harper the exclusive right to drill for oil and to extract and remove the same and any other merchantable minerals existing on the ten acres of land in question. By the second paragraph it was provided that two-thirds of the product from the land should be retained by Harper (the party of the second part). The fourth paragraph was in part as follows:

''The term of this agreement shall be the unexpired term of the lease between the 28 Oil Company and the Independence Oil Company and the renewal thereof as therein provided. And said party of the second part hereby agrees that he and his assigns, in consideration of the foregoing covenants, of the party of the first part, will drill upon said land, and complete within the terms and conditions of the said lease of the 28 Oil Company to the Independence Oil Company one well at his own expense, on or before the first day of October, 1902, and at least one well each year thereafter as provided in said lease.''

It also contained this language:

"This agreement is based upon and intended as a substitute for that certain application and resolution of June 23rd, 1902, between the Independence Oil Company of Coalinga and W. G. Griffith, said Griffith having assigned his right to drill on said ten acres of land of said company to the said W. L. Harper."

W. G. Griffith's original application for a sublease (mentioned in the last quotation) recited as a condition of such sublease: "That one well was to be drilled by him on or before the first day of October, 1902, and a well each year thereafter for the period of the term of the Independence, to wit, the unexpired term, and the renewal thereof." Standard Oil Company obtained a deed from Hanford Oil Company to the whole of section 28 on May 7, 1908. Previously Standard Oil Company had rceived assignments from successors of 28 Oil Company, including one from Independence Oil Company, dated March 26, 1907, of its interest in the lease.

The court found that at the time plaintiff acquired title to the real property here involved, said plaintiff knew that Slye's predecessors were in possession of the land extracting oil therefrom, "and had and claimed to have the exclusive right to drill upon said real property, hereinabove lastly described, and to extract oil, petroleum, and other merchantable minerals therefrom, under and pursuant to the terms of said agreement aforesaid, executed by said Independence Oil Company of Coalinga, said corporation, to said W. L. Harper, for and during the whole of said term, ending with the 30th day of September, 1919." It was also found that the Independence Oil Company bound itself to renew and continue the Harper lease for the additional period of ten years, and that plaintiff took its assignment of the lease from the said Independence Oil Company subject to the contract with W. L. Harper, and bound by the obligation to renew the term of Harper or his assigns and to extend the same for ten years—namely, to the thirtieth day of September, 1919. The court found that Roberts and others who had acquired the Harper interest had spent large sums of money in developing the property which they would not have expended except

under the assurance that they should hold the land for the long term.

Appellant's contentions are: 1. That when it purchased the interest of Independence Oil Company it had no notice, actual or constructive, of the claim by respondent or his predecessors of a right to remain in possession of the land beyond September 30, 1909; 2. That any covenant by Independence Oil Company to demand a new lease for Harper's benefit could not bind Standard Oil Company as purchaser of the fee or of the leasehold interest of Independence Oil Company; 3. That Independence Oil Company could not grant a term beyond that acquired under its own actual lease, nor did it covenant to demand a new lease for Harper; and 4. That the Harper lease was void because not ratified by the stockholders of the grantor according to the law in force at the date of its execution.

It is conceded by respondent that the Harper lease was not of record, although one of the intermediate assignments thereof was recorded. This was the assignment of the lease from Mt. Pelee Oil Company to George D. Roberts; but the parties to this assignment, being strangers to the record title, the recording thereof gave no notice of the contents of the lease. (*Garber* v. *Gianella*, 98 Cal. 529, [33 Pac. 458]; *Bothin* v. *California Title Ins. Co.*, 153 Cal. 724, [96 Pac. 500].) There was therefore no such constructive notice as would have been presumed from a recorded lease from the Independence Oil Company to Harper. Plaintiff, however, was charged with actual notice of the occupancy of the ten acre tract by Harper and his assigns and it was also constructively apprised of the contents of the lease from Hanford Oil Company to S. N. Griffith and the recorded assignments thereof carrying with them the right to sublease the property wholly or in parts for the residue of the term and the renewal thereof. The sublessees under the Harper lease were notoriously in possession of the property. "The first well was brought in Christmas morning, 1902," said witness Condon, secretary of the Stockholders Oil Company. George D. Roberts, president of that corporation, testified that he promptly served upon Hanford Oil Company and 28 Oil Company notices of the completion of this well as per contract, and demanded the unexpired term of their lease

to the Independence Oil Company, plus the renewal. Shannon, upon whom Roberts says he served these notices, was the general manager of the 28 Oil Company when Roberts went upon the ten acre strip. He knew all about the activity of Roberts, and knew long before the transfer was made to Standard Oil Company from 28 Oil Company that Roberts and his assigns asserted right to possession of the property until 1919. But appellant insists that, while there may have been evidence of the fact that Standard Oil Company had notice of the right to the long term claimed under the Harper lease, before the purchase of the interests of Hanford and 28 companies, no notice was given to it prior to its purchase of the lease of Independence Oil Company, and that it could not therefore be charged with notice of what that company had done. We think, however, that the notorious occupancy of the ten acre tract by those holding under the Harper lease was in itself sufficient to put Standard Oil Company upon its inquiry. Knowing the power of the Independence Oil Company to sublease for the residue of ten years and to acquire an additional ten years for its subtenants by a mere demand, it was bound to inquire the terms under which Independence Oil Company had surrendered this land. The subsequent conduct of the plaintiff shows that it recognized the claims of those asserting rights under the Harper lease. Its authorized agents endeavored several times, within a few months subsequent to the purchase of the leasehold of Independence Oil Company, to acquire the rights of the claimants of the Harper interest, but failed to agree upon terms, not because of the asserted privilege of the latter to occupy the premises until 1919, but because of difference of opinion regarding the amount which would fairly compensate the owner of the sublease. Of course such conduct does not operate as an estoppel against Standard Oil Company, but it does show that almost contemporaneously with the assignment from Independence Oil Company, Standard Oil Company acted as a corporation having actual knowledge of the terms of the Harper lease. The court's finding that the plaintiff bought the lease of Independence Oil Company with notice of the Harper lease was supported by the evidence.

Plaintiff insists that the covenant to renew the lease is a personal one not running with the land. In this behalf sections 1461 and 1462 of the Civil Code are cited. The former provides: "The only covenants which run with the land are those specified in this title, and those which are incidental thereto." And the latter is as follows: "Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land." Plaintiff's position is that such a covenant as the one here considered is not made for the benefit of the property but, on the contrary, is an injurious limitation upon the lessor's power of repossession. Even if this position were correct the plaintiff would be bound in conscience to fulfill the covenant. (*Bryan* v. *Grosse*, 155 Cal. 135, [99 Pac. 499].) But it was a covenant running with the land, and by purchasing the interest of the Independence Oil Company and accepting rent from the claimants under the Harper lease plaintiff placed itself in privity of estate with them. This covenant, running as it did with the land, was binding upon one holding in privity of estate with the assignee of the lessor. (*Salisbury* v. *Shirley*, 66 Cal. 225, [5 Pac. 104].) In the early case of *Laffan* v. *Naglee*, 9 Cal. 675, [70 Am. Dec. 678], this court held that a covenant to give the lessee a preference, in case the lessor should decide to sell the property, was a covenant running with the land. In the case of *Lyford* v. *North Pac. Coast R. R. Co.*, 92 Cal. 95, [28 Pac. 103], referring to the covenant there considered, the court used this language: "It is obvious that the agreement to continue to operate the railway is not a covenant which, under the code, would run with the land. It is not a covenant for the direct benefit of the property, i. e., the estate granted, as required by section 1462 of the Civil Code." This interpretation of the section brings the covenant here under review directly within the meaning of the statute, because obviously a covenant for a renewal of a lease is for the direct benefit of the estate granted. In Taylor on Landlord and Tenant, the rule is thus stated, at section 262: "The right of renewal constitutes a part of the tenant's interest in the land, and so a covenant to renew is binding upon the assignee of the reversion. So the grant of an additional term or of a right to purchase is, for many pur-

poses, to be considered a continuation of the former lease; and if there is nothing in the lease to show that such right or renewal was intended to be confined personally to the lessee, it will inure to his assignees or executors without these being particularly named.   Covenants running with the land are divisible, and will bind the assignee of a part of the estate demised, in respect to the parcel assigned to him, as to repair, or to pay rent of the part occupied by him.   (Where a covenant running with the land is divisible, if the entire estate in different parcels of the land passes by assignment to different individuals, the covenant will attach upon each parcel *pro tanto;* and the assignee of each parcel will be answerable for a proportionate part of the common burden, and will be exclusively liable for the breach of any covenant which related to his part alone.)''   One of the cases cited in this behalf by Taylor is *Piggott* v. *Mason,* 1 Paige Ch. (N. Y.) 413, decided by Chancellor Walworth.   This decision is frequently mentioned and followed in the opinions bearing on this subject.   In it the original lessor covenanted with the lessee and his assigns to renew the lease at the expiration of the term upon a fair valuation by appraisers.   Subleases were made by assignees of the original lessee's interest (which had been sold upon execution).   In these subleases the sublessors covenanted that sublessees should have the renewal upon the same terms as those upon which they themselves should receive the new lease.   The defendant in the action had become by purchase the owner of the reversion and all of the original lessor's interest, subject to the rights arising under the lease. It was held that a covenant of the lessor to renew the lease was one running with the land, the chancellor saying: ''It is well settled, even at law, that the assignee may recover in his own name for a breach of such a covenant, if the breach was committed after the assignment.   (*Lametti* v. *Anderson,* 6 Cow. (N. Y.) 302; *Withy* v. *Mumford,* 5 Cow. (N. Y.) 137; *Kane* v. *Sanger,* 14 Johns. (N. Y.) 89; *Grescot* v. *Green,* 1 Salk. 199.)   And it lies either for or against an assignee, although he is not named in the covenant.   (*Hyde* v. *The Dean and Canons of Windsor,* Cro. Eliz. 552.)   The assignee of a part of the premises may also recover *pro tanto,* if the covenant be in its nature divisible.   (Touchstone, 199; Co. Litt. 385a.)''   Other cases holding that such covenants run

with the land are *Leppla* v. *Mackey,* 31 Minn. 75, [16 N. W. 470]; *Callan* v. *McDaniel,* 72 Ala. 105; *McDaniel* v. *Callan,* 75 Ala. 330; *Wilkinson* v. *Pettit,* 47 Barb. (N. Y.) 234; *Cook* v. *Jones,* 96 Ky. 286, [28 S. W. 960], (a case holding that even where the original lessee after the sale of his leasehold interest agreed not to demand a renewal, that fact did not deprive the sublessee of his right to a renewal as to that part of the land included within his sublease); *Alford* v. *Jones,* (Ky.) 30 S. W. 1013; *McClintock* v. *Joyner,* 77 Miss. 680, [78 Am. St. Rep. 541, 27 South. 837]; *Robinson* v. *Perry,* 21 Ga. 186 [68 Am. Dec. 455]; *Blount* v. *Connolly,* 110 Mo. App. 607, [85 S. W. 605]; *Phelps* v. *Erhardt,* 5 N. Y. Supp. 540, [53 Hun, 630]; *Mitchell* v. *Young,* 80 Ark. 443 [117 Am. St. Rep. 89, 10 Ann. Cas. 423, 7 L. R. A. (N. S.) 221, 97 S. W. 454], (citing with approval *Bailey* v. *Richardson,* 66 Cal. 416, [5 Pac. 910]); *Leominster Gas Light Co.* v. *Hillery,* 197 Mass. 268, [83 N. E. 870], (holding that the reversioner is bound, even without notice, by the contract to renew although the sublease is unrecorded). Other authorities in support of the rule that a transferee of the lessor's interest is bound by a stipulation contained in a sublease are *Connor* v. *Withers,* (Ky.) 49 S. W. 310; *Kolasky* v. *Michels,* 120 N. Y. 635, [24 N. E. 278]; *Robinson* v. *Beard,* 140 N. Y. 111, [35 N. E. 441]; *Buttner* v. *Kasser,* 19 Cal. App. 755, [127 Pac. 811]; (petition for rehearing denied by this court November 19, 1912). Respondent cites *Bailey* v. *Richardson,* 66 Cal. 416, [5 Pac. 910], (a case discussed and approved in the very late case of *Buttner* v. *Kasser,* 19 Cal. App. 755, [127 Pac. 811]), as determinative of the questions here presented. In that case, as here, the plaintiff appeared as the owner of the fee and assignee of the lease. The court held that where a lessee, after subletting, assigns to the lessor, who collects from the sublessee the rent reserved in the sublease, the lessor comes in as assignee of the reversion and not as the owner of the fee, there being no merger of the term of the original lessee in the estate of his lessor. The court said of defendant: "Claiming the benefit of Dore's contract, he is estopped from denying that he has succeeded to his responsibilities." Dore was the assignee of the original lessee and the rights of plaintiff arose under a covenant in the sublease

running with the land. The case is in point and supports respondents' contention.

It is argued that a formal demand of a renewal of the lease was necessary and that failing to make it defendant forfeited all right to a continuance of his term to 1919. It may be conceded that defendant might have exercised the right of Independence Oil Company to demand a renewal of the lease from its lessors after that corporation had parted with its interest in the lease; but by the terms of the sublease the owners of the Harper interest were not required to make any demand at all, and as that duty devolved upon plaintiff as successor to the Independence Oil Company, it would have been idle to require Standard Oil Company as lessee to demand the extended term from itself as owner of the fee.

. Plaintiff insists that the original sublease from Independence Oil Company to Harper is not enforceable because not ratified by the stockholders of that company. At the time of the execution of that contract (July 18, 1902) a statute was in force which required such ratification. By this act it was provided as follows (Stats. 1897, p. 96) : "It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain in any way (except by location) any additional mining ground, unless such act be ratified by the holders of at least two-thirds of the stock of such corporation then outstanding." This statute, and its predecessor (Stats. 1880, p. 131), as explained by Mr. Justice Sloss in the opinion of this court in *Royal Con. Min. Co.* v. *Royal Con. Mines,* 157 Cal. 752, [137 Am. St. Rep. 165, 110 Pac. 123], has been given a less rigid and strict interpretation in the later cases than in the earlier ones. In that case formal ratification of the transaction involved was not found to be necessary where one of the participating directors owned more than two-thirds of the stock. While we would doubtless hold that, in the absence of some proof of actual ratification the lease would be of no effect if the act were still in force, we are confronted with the fact that it was repealed in 1905 (Stats. 1905, p. 74). The Harper contract was treated as valid by Independence Oil Company up to March 26, 1907, and Standard Oil Company collected the full amount of royalties from Har-

per's successors from that time until near the close of the
year 1909. Under clear principles of estoppel that corpora-
tion may not now assert the invalidity of a corporate act
regular upon its face. The courts have almost uniformly
sustained contracts which litigants who have profited thereby
have later sought to avoid on the ground that such agreements
were executed without proper authority. Such has been the
ruling in the following cases: *Main* v. *Casserly,* 67 Cal. 128,
[7 Pac. 426]; *Gribble* v. *Columbus Brewing Co.,* 100 Cal. 71,
[34 Pac. 527]; *Lawrence* v. *Johnson,* 131 Cal. 176 [63 Pac.
176]; *Jones* v. *Evans,* 6 Cal. App. 90, [90 Pac. 532].

No other alleged errors require discussion.

The judgment and order from which plaintiff appeals are
affirmed.

Henshaw, J., Lorigan, J., Shaw, J., Angellotti, J., and
Sloss, J., concurred.