[Civ. No. 2307.    Second Appellate District.—May 22, 1918.]

## L. M. HUEY, Respondent, v. A. T. PATTERSON et al., Appellants.

CORPORATION LAW — TRANSFER OF PROPERTY — ISSUANCE OF STOCK BY TRANSFEREE—VALIDITY OF TRANSACTION—QUESTION NOT PRESENTABLE IN STOCKHOLDERS' LIABILITY ACTION.—In an action to recover judgment upon the statutory liability of certain stockholders of a corporation, the defendants cannot question the validity of a transaction between the corporation and its corporate predecessor in business, by the terms of which the assets and business of the latter were taken over by the former and stock in the new corporation issued to the stockholders, although the transaction was in violation of section 309 of the Civil Code and sections 1227–1232 of the Code of Civil Procedure.

ID.—ACTION UPON STOCKHOLDERS' LIABILITY—OWNERSHIP OF STOCK—EVIDENCE.—In an action upon the statutory liability of stockholders in a corporation, proof of ownership of stock at a certain time is sufficient to show ownership at the time the liability was incurred, in the absence of evidence to the contrary.

ID.—VOID ASSESSMENT—RECOVERY OF MONEY PAID.—Stockholders of a corporation may recover of the corporation the amounts paid by them under a void assessment.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John M. York, Judge.

The facts are stated in the opinion of the court.

Manning, Thompson & Hoover, and Andrew M. Strong, for Appellants.

H. W. Kidd, and A. W. Ashburn, for Respondent.

WORKS, J., *pro tem.*—This is an action to recover judgment upon the statutory liability of certain stockholders of the Growers' Home Canneries Company, a corporation, which will hereafter, for convenience, be referred to as Second Company. That company was, under an arrangement which later will be stated more fully, the successor in business of the Growers' Home Canning Company, a corporation, which will be called, henceforth, First Company. The plaintiff sued as assignee of various holders of claims against Second Company, consisting of seven promissory notes, aggregating a total principal sum of $5,229, and a further claim for $750 principal, money loaned but for which no promissory note was given, or, in all, the principal sum of $5,979. Judgment was rendered against the defendants for their proportionate shares of this amount. The appeal is from the judgment.

One of the contentions of the appellants is that the arrangement by which Second Company succeeded to First Company was void. That arrangement is set forth in an agreed statement of facts found in the record and was, in effect, as follows: At a meeting of the stockholders of First Company there was passed a resolution providing that Second Company be organized with a certain capitalization; that the president and secretary of First Company be instructed to incur the expense necessary for the incorporation of Second Company; that the stockholders of First Company be asked to consent to the transfer of its assets to Second Company and to accept stock in the new company in lieu of their stock in the old in the proportion of ten shares for one, on account of the difference in the par value of the shares; and that all of the stockholders of First Company be given stock in Second Company in proportion to their holdings. All the appellants were holders of stock in First Company, were present at the meeting, and voted in favor of the resolution. At the same meeting it was voted that First Company offer to sell its plants, business, and all its property and to transfer its cash on hand and outstanding accounts to Second Company, the latter to assume the liabilities of First Company, all in consideration

of the shares of stock of Second Company to be issued to the stockholders of First Company in proportion to their holdings of its stock, and that the president of First Company be authorized to execute the deeds, assignments, bills of sale, and other papers necessary to carry out the terms of the offer. The motion included a draft of a letter to be transmitted to Second Company, setting forth the terms of the offer, and was carried unanimously. At the same meeting, Second Company already having been incorporated, a letter was received from it, by which the offer of First Company was accepted Thereupon, a motion was adopted by which the communication from Second Company was ordered received and placed on file and by which the president of First Company was authorized to execute the instruments necessary to effectually carry out the transaction. On the day on which the meeting of the stockholders of First Company was held, there was also convened the first meeting of the stockholders of Second Company. The agreed statement of facts shows that on or about that day each of the appellants subscribed for small holdings of the capital stock of Second Company and each of them was present at the meeting. A resolution was adopted which recited a receipt of the above-mentioned offer from First Company and which authorized the directors of Second Company to accept the proposition, to purchase the property of First Company upon the terms of the offer, and to issue stock in accordance therewith. The appellants each voted for the resolution. The corporations thereafter executed and issued all the instruments and certificates of stock necessary to effectuate the contemplated transaction.

The contention that this arrangement was invalid is based upon section 309 of the Civil Code and sections 1227–1232 of the Code of Civil Procedure. Speaking generally, but yet in terms sufficient for our present purpose, the section of the Civil Code forbids directors of corporations to make dividends on stock except from surplus profits, or to divide, withdraw, or pay to the stockholders any part of capital stock; and the sections of the Code of Civil Procedure provide a scheme for the dissolution of corporations upon notice and by a special proceeding instituted in the superior court.

Dealing with the question of the validity of the transaction between the corporations as measured by the provisions of both section 309 of the Civil Code and sections 1227–1232 of

the Code of Civil Procedure, we need concern ourselves only with an inquiry as to whether the appellants are in a position to invoke the terms of the statute. The point made by the appellants goes only to the alleged attempt to divide the capital stock of First Company among its stockholders and to work a dissolution of that corporation, and has no bearing whatever upon the question of the existence of Second Company or upon the query as to whether the appellants are stockholders in it. Any infirmity in the arrangement between the two corporations, because of the sections of the codes which are cited, is of concern only to those having an interest, either as creditors or stockholders, in the property of First Company. The appellants, objecting alone as stockholders of Second Company, and in an action to which First Company is a stranger, are in no position to present the question. These considerations are based on *O'Dea* v. *Hollywood Cemetery Assn.*, 154 Cal. 53, 67, [97 Pac. 1].

The obligations which are the basis of this action were incurred by Second Company in January and September, 1913, and in May, 1915. Under the language of section 322 of the Civil Code, relating to the liability of stockholders for corporate debts, the burden of proof was upon the respondent to show the number of shares of the stock of the corporation held by each stockholder "at the time the debt or liability was incurred." The agreed statement of facts shows who were the stockholders on or about December 11, 1912, and shows the number of shares owned by each, but it does not make such a showing as of any other time. The appellants contend that this condition of the agreed statement does not sustain the burden cast upon the respondent; but the rule is established in a number of cases that where the state of the title to property is shown as of a particular time, the same condition is presumed to exist until the contrary appears. Under this rule there appears to be no distinction between the different classes of property, as some of the cases relate to realty (*Hohenshell* v. *South Riverside L. & W. Co.*, 128 Cal. 627, 631, [61 Pac. 371]; *Jennings* v. *Jordan*, 31 Cal. App. 335, 339, [160 Pac. 576]), while others apply the doctrine in the case of personal property (*Fredericks* v. *Tracy*, 98 Cal. 658, [33 Pac. 750]; *Newlove* v. *Pond*, 130 Cal. 342, [62 Pac. 561].) We are satisfied that the showing in the agreed statement of

facts, there being no evidence to the contrary in the record, is sufficient to support the judgment.

Several of the notes sued on were executed by Second Company for the purpose of reimbursing the payees, who were stockholders in the corporation, in amounts paid by them into the corporate treasury upon a certain invalid assessment upon the corporate stock. The appellants contend that there can be no recovery upon these notes for the reason that the stockholders who advanced their respective portions of the void assessments had no cause of action against the corporation for the recovery of their money, antecedent to the execution of the notes; and it is of course true that the liability of stockholders, in such an action as this, must be measured by the question whether an original obligation of their corporation is enforceable by its holder. The liability of stockholders is not primarily predicable upon notes, the execution of which is based upon pre-existing obligations. (*Hunt* v. *Ward*, 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335] ; *Santa Rosa Nat. Bank* v. *Barnett*, 125 Cal. 407, [58 Pac. 85] ; *Gardiner* v. *Royer*, 167 Cal. 238, [139 Pac. 75]), but upon the pre-existing obligations themselves. Was there, then, a legal liability upon the corporation to return the amounts advanced on account of the void assessment? It appears that this specific question has never been answered in California, nor have we, despite the fact that appellants cite cases from other states to the point, been able to ascertain that it has been passed upon elsewhere, even after some research of our own. There are principles of law, however, announced in decisions of the California courts, which furnish an analogy giving us much aid in the determination of the question. For instance, it is well settled that a corporation which receives and retains the fruits of a contract *ultra vires* cannot be heard to assert the invalidity of the contract in an action brought to recover upon it. (*Main* v. *Casserly*, 67 Cal. 127, [7 Pac. 426]. See, also, *Standard Oil Co.* v. *Slye*, 164 Cal. 435, 445, [129 Pac. 589].) Also, there is a long line of cases beginning as early as *Argenti* v. *San Francisco*, 16 Cal. 255, laying down the very just rule that a municipal corporation which has obtained the money or property of another through mistake or without legal right may be compelled to return it as upon an implied contract. Some of these cases are on principle closely allied to the one now before us. (*County of Los Angeles* v. *City of*

*Los Angeles,* 65 Cal. 477, 480, [4 Pac. 453] ; *County of Colusa* v. *County of Glenn,* 117 Cal. 434, [49 Pac. 457] ; *Higgins* v. *San Diego Water Co.,* 118 Cal. 524, 555, [45 Pac. 824, 50 Pac. 670] ; *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, [73 Pac. 189].)   The language used in the opinion in the first case of this group is particularly apposite.   Certain fines belonging to Los Angeles County had been paid into the treasury of the city of Los Angeles by mistake.   The county sued the city to recover the diverted moneys and the supreme court said, in disposing of the question: "Under a mistaken belief that they were legally liable to pay over these fines into the city treasury, the officers reported and paid them to the city, and the city treasurer doubtless received them under the same mistake.   But this disposition of them was not authorized by law; and as the city, by the mistake of its officers in the performance of their duty, has obtained money which under the law ought to have been paid into the county treasury, it ought not in justice to be kept; it is the duty of the city to refund it.   'If,' says Mr. Justice Field in *Argenti* v. *San Francisco,* 16 Cal. 255, 'the city obtain money of another by mistake or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial.' "   We conclude that, under the facts of the present case, the stockholders who paid the amounts attempted to be charged against them by reason of the invalid assessment could have maintained an action against the corporation for their return, and that, therefore, the liability of the stockholders attaches.

It is objected by appellants that a liability against them as stockholders does not exist in the case of certain other promissory notes upon which respondent sues.   These notes were originally given to stockholders of the company for advances made by them, and the question arises, upon the point made by appellants, as to whether the advances were loans or were voluntary assessments by the stockholders against their own stock.   The appellants make much of the fact that the advances were in amounts equal to five per cent of the par value of the holdings of the stockholders, and they cite cases to the effect that a voluntary contribution by stockholders to the funds of a corporation, to tide it over financial difficulties, is for the betterment of their stock and does not create a debt

against the corporation. These authorities are not in point, for the records of the corporation show that the advances were loans, pure and simple. At a special meeting of the directors it was stated that it was necessary to raise a certain sum of money "in order to pay off current and past due bills." A resolution was then adopted authorizing the president and secretary to borrow the amount and to execute a note for it. Some of the directors then indicated a willingness "to make the loan to the Co.," whereupon the money was paid over and a note was taken by a certain individual as trustee for the lenders. The promissory note was given in the ordinary form, as the resolution authorizing its execution required the insertion of no special terms in it; but the minutes show, after what they disclose as to the willingness of the stockholders to lend the needed money, that "it was further stipulated above-mentioned note . . . is to be paid from sales of merchandise or from sales of the treasury stock of the corporation." This "stipulation" is no part, in form, of any resolution or motion, but, even if it be treated as a motion, it could not operate to limit the terms of the promissory note. If it be conceded to have any operation whatever as to the lenders, it can amount to nothing more than an indication of a willingness on their part to await for some time the payment of the note. Under all these circumstances it plainly appears that the advances by the stockholders were not voluntary contributions, but that they fixed the relation of creditors and debtor between the stockholders and the corporation.

It is contended by the appellants that the claim for $750, not evidenced by a promissory note, is barred by the statute of limitations, section 338 of the Code of Civil Procedure fixing a limitation of three years for the commencement of a certain class of actions, which includes those like the present one. The question arises under the following facts: Second Company was indebted upon a certain promissory note executed by First Company, which Second Company had assumed, and on which one of the stockholders of both corporations, E. B. Rivers, was an accommodation indorser and guarantor. This note was dated more than three years before the commencement of the action. The note was for $1,750 and one thousand dollars had been paid upon it at a certain time. At a date within three years before the commencement of the action, demand was made upon Second Company for payment

of the balance due but the demand was not complied with. Thereupon demand was made upon Rivers and he paid, taking an assignment of the note. A new obligation arose in favor of Rivers upon the payment of the note by him and the statute began to run at that time upon that obligation. (*Yule* v. *Bishop,* 133 Cal. 574, [62 Pac. 68, 65 Pac. 1094]; *McDonough* v. *Nowlin,* 17 Cal. App. 45, [118 Pac. 463].) The fact that Rivers took an assignment of the note cannot affect the principle just stated, for the reason that the claim for the amount paid by him is not based upon the note. The claim is not barred.

There are two or three other points presented by the appellants but they do not merit a specific consideration.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1918.