## BUELL v. SIMON NEWMAN CO.
### No. 11118.

Circuit Court of Appeals, Ninth Circuit.

March 11, 1946.

36

J. Everett Barr, of Yreka, Cal., for appellant.

Edward F. Treadwell, Reginald S. Laughlin and Treadwell & Laughlin, all of San Francisco, Cal., for appellee.

Before MATHEWS, BONE, and ORR, Circuit Judges.

MATHEWS, Circuit Judge.

In an action by appellant, W. E. Buell, a citizen of Oregon, against appellee, Simon Newman Company, a California corporation, to recover rents alleged to be due and owing to appellant by appellee, judgment was entered that appellant take nothing, and that appellee recover its costs.[1] From that judgment appellant has appealed. The facts are as follows:

On December 6, 1943, appellant and Montague Water Conservation District, a taxing agency located, in Siskiyou County, California,. made an agreement wherein they set forth a plan for the composition of the district's debts. The agreement recited that the district had outstanding $1,395,000 of bonds, of which appellant had in his possession for the purposes of collection $1,265,000—more than 90% of the total. The plan of composition set forth in the agreement provided that appellant would act as trustee for all the bondholders, and that "All income from rents and royalties accruing after December 31, 1943, upon lands now [December 6, 1943] owned by the district shall belong to the bondholders, provided * * * that from such rental there shall be deducted and retained by the district an amount equal to the maintenance and operation assessments

that would have been levied upon the lands from which such rental is derived had the lands been in private ownership."

On December 10, 1943, the district filed with the court below a petition under chapter 9[2] §§ 81–84, of the Bankruptcy Act, 11 U.S.C.A. §§ 401–404. The plan of composition set forth in the agreement of December 6, 1943, was filed and submitted with the petition.

On January 1, 1944, the district leased to appellee, for the term of one year commencing on that date, certain land in Siskiyou County. Instead of requiring payment of rents in money, the lease provided that "lessee [appellee] will deliver to the lessor [the district], or its order, one equal one-fourth (¼) of all the proceeds and crops produced on said premises of every kind and description, any and all hay produced to be divided on said premises in stack; all grain to be divided and lessor's share to be delivered to [lessor] at Montague, California * * * in seasonable time after such crop shall have been gathered and harvested." No other rents were mentioned in the lease.

On March 4, 1944, a judge of the court entered an interlocutory decree confirming the plan of composition.

On May 27, 1944, the district sold and conveyed to appellee for $32,420.85 the land which it had leased to appellee on January 1, 1944. A crop of "grain" had been planted on the land,[3] but no crop had been gathered or harvested, nor was any crop ready to be gathered or harvested, when the land was sold and conveyed to appellee. Subsequently, in 1944, there was harvested from the land a crop of the value of $13,308. The district made no claim for rents.

On November 1, 1944, this action was commenced. The complaint alleged that, by virtue of the lease of January 1, 1944, there were due and owing by appellee rents the amount of which appellant did not know, but which, on information and belief, he alleged to be in excess of $3,500, and that all rents due the district in 1944 had been assigned by the district to appellant.[4] The complaint prayed for an ac-

---

[1] Buell v. Simon Newman Co., D.C.N. D.Cal., 61 F.Supp. 157.

[2] Formerly chapter 10. See 50 Stat. 653–659, 52 Stat. 939.

[3] Whether this was corn, wheat, oats, rye, barley or some other "grain" the

the record does not show. It does, however, show that the "grain" was only about six inches high when the land was sold and conveyed to appellee.

[4] There was, in fact, no such assignment.

counting of rents due appellant and for "all other relief which may be equitable."

On November 18, 1944, appellant, as trustee for all the bondholders, executed and delivered to appellee a release whereby appellant, as such trustee, acknowledged receipt of the $32,420.85 paid by appellee for the land and, in consideration thereof, released the land from any liability for payment of the district's outstanding bonds.[5] Rents were not mentioned in the release.

On December 13, 1944, appellee answered. The answer denied the above mentioned allegations of the complaint. Paragraph 6 of the answer was as follows:

"Further answering said complaint, said defendant [appellee] alleges that at the time of the execution of said lease and at the time that the said lease went into effect, on the 1st day of January, 1944, there was a crop of grain planted on said property. Thereafter and on the 27th day of May, 1944, the Montague Water Conservation District sold and conveyed all of the leased property to this defendant [appellee], Simon Newman Company, in consideration of the payment of $32,420.85 by this defendant to the said Montague Water Conservation District, and at that time the said lease was merged in the title of said land. Up to that time the said crop of grain was about six inches high, and no crops of any kind had been taken off said land, and no rent whatever under said lease had accrued, and title to said property, upon said merger, entirely vested in said Simon Newman Company, and no part of said property or the crop thereon, as rent or otherwise, since belonged to said Montague Water Conservation District or the plaintiff [appellant] herein. Pursuant to the provisions of said composition agreement[6] and said order of this court,[7] the said W. E. Buell [appellant], in consideration of the payment to him of said sum of $32,420.85, made, executed and delivered a certificate of release,[8] a copy of which is attached hereto marked 'Exhibit A,' and thereby released any claim that he had to said crop as rent of said land. Defendant further alleges that thereafter the said crop was matured and harvested by the defendant, and one-quarter of said crop as matured and harvested was of the value of $3,327, but it alleges that neither the Montague Water Conservation District nor the said plaintiff is entitled to any part thereof. It further alleges that said Montague Water Conservation District makes no claim to any rent under said lease."

Appellant moved to strike paragraph 6 of the answer and Exhibit A attached thereto, on the ground that they were redundant and superfluous and did not constitute a valid defense. The motion was denied. The case was tried and submitted upon a stipulation of facts. The stipulation showed the facts to be as we have stated them. Upon these facts, the court concluded that no rents were due or owing to appellant by appellee. Hence the judgment here appealed from.

■ Two alleged errors are specified.[9] Specification 1 is that the court erred in denying appellant's motion to strike. This specification was not argued by appellant in his brief or orally. However, we have considered it and find no merit in it. The motion was properly denied.

■ Specification 2 is that the court erred in finding that the release of November 18, 1944, "was a release of appellee's obligation to pay rent." There was no such finding. As indicated above, the rents sought to be recovered in this action were rents alleged to be due and owing by appellee under the lease of January 1, 1944, which did not provide for or require the payment of any rents except a share (one-fourth) of whatever crops were gathered and harvested from the leased land while the lease was in effect. The lease was in effect from January 1, 1944, to May 27, 1944, but no crop was gathered or harvested from the land during that period. A crop was gathered and harvested from the land after May 27, 1944, but the court did not find or hold that the lease was in effect after May 27, 1944. Instead, the court held that the lease was terminated by the sale and conveyance of the land to appellee on May 27, 1944, the lesser estate being thereby merged in the greater

---

[5] This was in accordance with the plan of composition.

[6] The agreement of December 6, 1943.

[7] The interlocutory decree of March 4, 1944.

[8] The release of November 18, 1944.

[9] See our Rule 20(2) (d).

estate. That holding was correct.[10] Appellee, therefore, was under no obligation to pay rents and needed no release from such an obligation. Whether the release of November 18, 1944, would have released appellee from its obligation to pay rents, if such an obligation had existed, need not be considered.

By the terms of the lease of January 1, 1944, rents accruing thereunder were payable to the district, not to appellant. By the terms of the plan of composition, the district was required to retain, from rents so accruing, an amount equal to the maintenance and operation assessments which would have been levied on the leased land had it been in private ownership. The balance, if any, was payable to the bondholders, not to appellant. This action was not brought by the district or by the bondholders, but was brought by appellant, upon the claim that rents due the district in 1944 had been assigned to appellant. The record shows no such assignment. Appellant was trustee for the bondholders, but did not bring or prosecute this action as such trustee. He brought and prosecuted it in his individual capacity. Since, however, no rents accrued under the lease of January 1, 1944, we need not consider whether such rents, if they had accrued, could have been recovered in this action.

Judgment affirmed.

---

[10] Erving v. James H. Goodman & Co. Bank, 171 Cal. 559, 153 P. 945; Landis Bros. Co. v. Lawrence, 104 Cal.App. 499, 286 P. 177; 35 C.J., Landlord and Tenant, § 220, p. 1056; 32 Am.Jur., Landlord and Tenant, § 829, p. 706.