*Decision will be entered under Rule 50.*

AMHERST COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12674.   Promulgated August 30, 1948.

*William M. Drennen, Esq.,* and *Charles W. Moxley, Esq.,* for the petitioner.

*Paul E. Waring, Esq.,* for the respondent.

## OPINION.

BLACK, *Judge*: As indicated at the beginning of this report, the sole remaining issue is whether the respondent erred in computing the amount of percentage depletion allowable to petitioner for the year 1942 by treating petitioner's operations as two separate properties within the meaning of section 114 (b) (4) of the Internal Revenue Code, rather than as one property, as contended for by petitioner. The material part of this section of the code, as amended, and the material part of Regulations 111 are set forth in the margin.[2]

---

[2] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.
\* \* \* \* \* \* \*
  (b) BASIS FOR DEPLETION.—
  \* \* \* \* \* \* \*
  (4) PERCENTAGE DEPLETION FOR COAL \* \* \*.—

Although the respondent determined that petitioner's depletion should be computed as if it derived income from two properties, he now argues that, under his regulations and rulings, petitioner actually

(A) In General.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property * * *.

(B) Definition of Gross Income From Property.—As used in this paragraph the term "gross income from the property" means the gross income from mining. The term "mining," as used herein, shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. The term "ordinary treatment processes", as used herein, shall include the following: (i) In the case of coal-cleaning, breaking, sizing, and loading for shipment * * *.

Sec. 29.23 (m)–1 [Regulations 111]. Depletion of Mines, Oil and Gas Wells, Other Natural Deposits, and Timber: Depreciation of Improvements.—Section 23 (m) provides that there shall be allowed as a deduction in computing net income in the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements. Section 114 prescribes the bases upon which depreciation and depletion are to be allowed.

* * * * * * *

When used in these sections (29.23 (m)–1 to 29.23 (m)–28, inclusive) covering depletion and depreciation—

* * * * * * *

(b) A "mineral property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction. The value of a mineral property is the combined value of its component parts.

(c) The term "mineral deposit" refers to minerals in place. * * *

(d) "Minerals" include ores of the metals, coal * * *

* * * * * * *

(f) "Gross income from the property," as used in section 114 (b) (3) and (4) and sections 29.23 (m)–1 to 29.23 (m)–28, inclusive, means the amount for which the taxpayer sells the crude mineral product of the property in the immediate vicinity of the mine or well, but, if the product is transported or processed (other than by the processes excepted below) before sale, it means the representative market or field price (as of the date of sale) or crude mineral product of like kind and grade before such transportation or processing. * * * The processes excepted are as follows:

(1) In the case of coal-cleaning, breaking, sizing, and loading at the mine for shipment;

* * * * * * *

In all cases there shall be excluded in determining the "gross income from the property" an amount equal to any rents or royalties which were paid or incurred by the taxpayer in respect of the property and are not otherwise excluded from the "gross income from the property." * * *

(g) "Net income of the taxpayer (computed without allowance for depletion) from the property," as used in section 114 (b) (2), (3), and (4) and sections 29.23 (m)–1 to 29.23 (m)–28, inclusive, means the "gross income from the property" as defined in paragraph (f) of this section less the allowable deductions attributable to the mineral property upon which the depletion is claimed and the allowable deductions attributable to the processes listed in paragraph (f) in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. Deductions not directly attributable to particular properties or processes shall be fairly allocated. * * * If more than one mineral property is involved, the deductions apportioned to the mineral extraction and the processes listed in paragraph (f) shall, in turn, be fairly apportioned to the several properties, taking into account their relative production.

* * * * * * *

(i) "The property," as used in section 114 (b) (2), (3), and (4) and sections 29.23 (m)–1 to 29.23 (m)–19, inclusive, means the interest owned by the taxpayer in any mineral

had 17 different properties. He bases this argument on the contention that each acquisition of an interest in each seam of coal in the lands acquired, either in fee or by lease, constitutes a property. The respondent, therefore, now contends that petitioner had 17 different properties, arrived at as follows:

| Lands described in our findings as— | Number of acquisitions | Seams in each acquisition | Number of properties acquired |
|---|---|---|---|
| (a) | 2 | 3 | 6 |
| (b) | 1 | 3 | 3 |
| (c) | 1 | 3 | 3 |
| (d) | 2 | 1 | 2 |
| (e) | 1 | 3 | 3 |
| Total number of properties acquired | | | 17 |

On the other hand, petitioner contends that it had but one property within the meaning of section 114 (b) (4), *supra*, but that, if this Court should hold that it had two or more properties, then it should nevertheless be permitted to treat such properties as a single property under section 29.23 (m)-1 (*i*) of Regulations 111, *supra*, providing in part:

> * * * but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single "property," provided such treatment is consistently followed.

Although the respondent now contends there were 17 different properties, he does not contend that for the year 1942 it is necessary to make a separate depletion computation for each of the 17 properties, but is content to abide by his computation of depletion as set out in Exhibit A–1, in the statement attached to the deficiency notice. This is the substance of the supplemental stipulation of facts filed by the parties.

The respondent's contention that petitioner had 17 different properties is based upon the same authorities as advanced by him in the case of *Black Mountain Corporation*, 5 T. C. 1117. The taxpayer in that case acquired a large coal property in 1909, another even larger one in 1911, a smaller one in 1917, and numerous smaller ones subsequent to that date. The properties were contiguous. The taxpayer

---

property. The taxpayer's interest in each separate mineral property is a separate "property"; but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single "property," provided such treatment is consistently followed.

   *      *      *      *      *      *      *

SEC. 29.23 (m)–5. COMPUTATION OF DEPLETION BASED ON PERCENTAGE OF INCOME IN CASE OF COAL MINES * * *.—Under section 114 (b) (4) a taxpayer may deduct for depletion an amount equal to 5 percent of the gross income from the property during the taxable year in the case of coal mines * * * but such deduction shall not in any case exceed 50 percent of the net income of the taxpayer (computed without allowance for depletion) from the property. * * *

constructed two mines, Nos. 30 and 31, approximately one and one-fourth miles apart. The mine openings were both located on lands acquired in 1917. Some of the lands acquired in 1909, 1917, and after 1917 were assigned to each mine. Also some of the lands acquired in 1911 were assigned to mine No. 31. Each mine had its own complete facilities such as office, store, and houses for the workmen. All records of each mine were kept separately and the mines were treated as separate units in all ways by the taxpayer. In computing its percentage depletion the taxpayer consistently treated the two mines as two properties. The Commissioner determined that the two mines were a single property. This resulted in a lower depletion allowance, due to the fact that one of the mines had been operating at a loss. In his brief, however, the Commissioner made a different contention. He there contended that each separate acquisition was a separate property; that practically all of the coal mined from the two mines was from lands acquired in 1909; and that only a small percentage was from lands acquired after 1917. After a full consideration of the Commissioner's contentions and the authorities relied upon by him, we held in favor of the taxpayer. Among other things in our opinion, we said:

The petitioner contends that "the property" as used in section 114 (b) (4) means the economic and practical unit which the taxpayer must use and develop in order to extract a particular block of coal. It includes whatever portion of the mineral deposit can be properly mined as a unit and it includes also the development, plant, and surface land necessary for the extraction of that particular block of coal. Under this theory a large block of coal acquired at one time might constitute more than one property, or smaller blocks of coal acquired at different times might combine to form a single property.

\* \* \* \* \* \* \*

We are unable to see the necessity for the Commissioner's contention that every separate acquisition of coal lands must be treated as a separate property for the purpose of computing percentage depletion. Separate acquisitions can, under proper circumstances, be combined to form one property and, likewise, under proper circumstances, one acquisition may become a part of two different properties for this purpose.

In line with our decision in *Black Mountain Corporation, supra*, we reject the respondent's contention in the instant proceeding that petitioner had 17 different properties. Petitioner had 3 mines, Nos. 1, 2, and 3, and 2 tipples, Nos. 1 and 3. The coal mined from mines Nos. 1 and 2 was loaded at tipple No. 1 and the coal mined at mine No. 3 was loaded at tipple No. 3. Petitioner contends that it had but one property, and, in view of the evidentiary facts set out in our findings of fact, we incline to that view. But, as will appear later in this opinion, we need not decide the precise question of whether petitioner had one property or more than one. For reasons above stated, we hold that petitioner did not have 17 different properties.

Since petitioner is contending that even if it had more than one property, it would be entitled under section 29.23 (m)–1 (*i*) of Regulations 111, *supra*, to treat such properties as a single property, we may assume, as we did in *Jewel Mining Co.*, 43 B. T. A. 1123, that, for the purposes of considering this provision of the regulations, petitioner did have more than one property as the term "property" is used in section 114 (b) (4), *supra*.

Upon the basis of this assumption, is petitioner entitled to treat such assumed properties as a single property under the above quoted provisions of section 29.23 (m)–1 (*i*) of Regulations 111? The respondent in his brief, after referring to this provision of the regulations, says:

> \* \* \* This would mean, in the instant case, that the taxpayer would be entitled to treat the three mineral properties in Tract 38 as a single property; or that it might treat the three properties acquired in the single tract or single leasehold in 1929 as one property. It does not mean that the taxpayer may combine the several tracts operating through Tipple No. 3 or through Tipple No. 1, as one property as a matter of right. No objection has been raised to the taxpayer's combining several properties operated through one tipple where the revenue is unaffected. It is not the practice of the Commissioner to raise any question respecting a combination of several properties operated as a unit where the effect on the revenue is nil. But where the revenue is affected, it is the duty of the Commissioner to raise a question respecting such combinations. That is the case here.

It thus appears that, so far as the respondent is concerned, he emphasizes one test in any case where a taxpayer claims the right to have its interests in two or more mineral properties considered as a single property under this regulation, and that is whether or not it will have any effect on the revenue. We see no basis in law for such a test. The taxpayer's right to consider its interests in two or more mineral properties as a single property or as separate properties should not be made to depend upon which method will produce the most revenue. Such was not the test applied in *Jewel Mining Co.*, *supra*.

In that proceeding before the United States Board of Tax Appeals, now this Court, the taxpayer contended that its income was from one property and, in the alternative, that, even though the income be held to arise from two separate properties, it was entitled under article 23 (m)–1 (*j*) of Regulations 86, which is identical with section 29.23 (m)–1 (*i*) of Regulations 111, *supra*, *to* treat such properties as a single property. The Board found it unnecessary to decide the principal question for the reason that, even upon the assumption that the total income was from two separate properties, it was of the opinion, and so held, that the requirements of the regulations were fully satisfied. The Board was reversed by the United States Circuit

Court of Appeals for the Eighth Circuit, in *Helvering* v. *Jewel Mining Co.*, 126 Fed. (2d) 1011. The Circuit Court decided both the principal and alternative questions. On the principal question it held that "Each separate coal mine independently operated by its owner constitutes a separate 'property' for all practical purposes in computing depletion." In considering the alternative question the court laid down the following test:

> \* \* \* The test prescribed is that
>
> 1. The income from both properties must be consistently treated by the taxpayer as arising from a single property in computing depletion allowance;
>
> 2. There must be an "interest" "owned by the taxpayer" in both properties; and
>
> 3. The two properties must be "included in a single tract or parcel of land."

The Circuit Court then stated that unless all of these conditions coexist the income from the two properties may not be combined for the purpose of computing depletion. It held that the taxpayer met the first element of the test, but not the second, and that it was therefore unnecessary to decide whether or not it met the third. In holding that the taxpayer did not meet the second element, the court, among other things, said:

> It scarcely requires further analysis to disclose that the taxpayer in the present case is not entitled to combine the income from its own operations with the royalties received from its sublessee for the purpose of computing depletion. At the mine operated by the taxpayer it has a leasehold estate in the mineral deposit and in the necessary surface of the land, and it owns outright the plant, furnishes the capital and manages and controls the business operations connected with extracting and marketing the coal. At the other mine the taxpayer owns a covering leasehold, but it does not own the plant nor furnish the capital to operate it; and it has no control over the management. Its "interest" in the "mineral property" and the mining operations is neither freehold nor leasehold. In granting a sublease to the Blue Ribbon Mining Company, the taxpayer, in so far as it could legally do so, divested itself of its rights in that part of the 800 acre tract included in the sublease, retaining only the right to receive and distribute the royalties provided for in the sublease and the obligation to account according to the provisions of its own lease with its lessor. The situation does not come within the provisions of subsection (j) of the regulation authorizing the taxpayer's interest in two or more mineral properties to be considered a single property.

In the instant proceeding we think petitioner meets all three elements of the prescribed test. We have found as an ultimate fact, from all the evidentiary facts set out in our findings of fact, that in computing its depletion allowance on the percentage basis petitioner has consistently treated the income from its coal-mining operations as arising from a single property. We hold, therefore, that petitioner has satisfied the first element of the required test.

The second element is that there must be an "interest" "owned by

the taxpayer" in both properties. Assuming that petitioner operates more than one property, its interest in all the properties is within the meaning of the regulation. As to this element the court in *Helvering* v. *Jewel Mining Co.*, *supra*, said in part:

* * * The "interest" of the taxpayer, therefore, in the mineral properties, the income from which is sought to be combined as derived from a single property, must include these three factors, (1) the mineral deposit, (2) the plant for its extraction, and (3) the necessary surface of the land.

Petitioner's interest in each property, assuming there is more than one property, does include all three of the named factors. No other corporation or person is paying petitioner royalties or working interests, as was the case in *Helvering* v. *Jewel Mining Co.*, *supra*. Petitioner operates all the lands involved herein as a common enterprise. Cf. *J. T. Sneed, Jr.*, 40 B. T. A. 1136; affd., 119 Fed. (2d) 767. The interest in the properties is all owned by petitioner, either in freehold or leasehold. We hold, therefore, that petitioner meets the second element of the test.

The third element is that the two properties must be included in a single tract or parcel of land. All of petitioner's acquisitions are contained within a single continuous boundary. The land of no one else is contained within petitioner's boundary. The respondent contends, however, that the phrase "a single tract or parcel of land" does not mean several separately acquired tracts or parcels of land within a continuous boundary. He argues that:

* * * The meaning of the phrase is clear and was written into the Regulations under the principle that each separate purchase or acquisition of an interest in mineral in a tract or parcel of land comprises a "property." Therefore, when such tract or parcel of land is underlaid with two or more deposits or bodies of minerals, each interest in each of such bodies is a separate property under G. C. M. 22,106, supra, but, if so elected, an interest in all of such deposits or bodies of minerals on the same tract or parcel of land may be considered a single "property."

On the basis of the respondent's interpretation of the phrase, the least number of properties that petitioner could have under the lumping provision of the regulations for the purposes of computing percentage depletion would be seven, namely, the number of acquisitions. This we rejected in *Black Mountain Corporation*, *supra*, where we held that separate acquisitions can, under proper circumstances, be combined to form one property.

In *Berkshire Oil Co.*, 9 T. C. 903, 910, we quoted with approval from a case by the Supreme Court of Louisana as follows: "* * * to constitute a single tract of land the lands must be so situated that one may pass from one part to the other without passing over the

lands of another. * * *" To the same effect, see 46 Corpus Juris 1178 and Words and Phrases, vol. 31, p. 58.

We hold that petitioner meets the third and final element of the above mentioned test, and that, assuming that petitioner had an interest in more than one mineral property, it should be permitted, under section 29.23 (m)–1 (*i*) of Regulations 111, *supra*, to consider its interest in such properties as a single property for the purposes of computing percentage depletion.

*Decision will be entered under Rule 50.*