**LLOYD CORPORATION, Ltd., a corporation, Plaintiff,**

v.

**R. A. RIDDELL, District Director of Internal Revenue, Los Angeles District, Defendant.**

**Civ. No. 62–1296.**

United States District Court
S. D. California,
Central Division.
Oct. 9, 1963.

Musick, Peeler & Garrett, Los Angeles, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Section, Thomas H. McPeters, Asst. U. S. Atty., for defendant R. A. Riddell.

BYRNE, District Judge.

Plaintiff, Lloyd Corporation, Ltd., brought this action against R. A. Riddell, District Director of Internal Revenue, Los Angeles District, to recover a portion of the federal income taxes paid by plaintiff for the calendar years 1956 and 1957.

The dispute involves determination of the depletion allowance for certain oil and gas properties, and arose in the manner described below.

Prior to September, 1933, plaintiff and South Basin Oil Company (hereinafter referred to as South Basin) had each acquired an undivided one-half fee simple interest in a 2,794.62 acre parcel of contiguous land located in what is now the eastern portion of the Ventura Avenue Oil Field, located in the State of California.

By agreement dated November 16, 1933, plaintiff and South Basin joined in an oil and gas lease of the property to Property Service Corp., and reserved to themselves a one-sixth net royalty on all oil and gas produced under the lease.

In May, 1934, Property Service Corp. assigned its entire leasehold interest to plaintiff. Subsequently, in December, 1935, plaintiff assigned an undivided one-half interest to Shell Oil Company. Thereafter Shell Oil Company completed a producing well on the property, and in December, 1936, reassigned the one-half of the leasehold interest back to plaintiff with the exception of 7.95 acres surrounding the producing well. (This 7.95 acre parcel is hereinafter referred to as the Shell-Lloyd Property. The remainder of the 2794.62 acre parcel is hereinafter referred to as the Lloyd Property.)

On November 5, 1937, the plaintiff quitclaimed to itself and South Basin, in equal undivided shares, the entire leasehold interest except insofar as the interest covered the Shell-Lloyd Property. On that same day plaintiff and South Basin joined in an oil and gas lease of the operating interest in the Lloyd Property to Property Service Corp. and reserved a one-sixth net royalty with respect to all oil and gas produced under the terms of the lease. At that time plaintiff owned 98.5% of the issued and outstanding capital stock of Property Service Corp. Then, in December of 1937, Property Service Corporation assigned its entire leasehold interest to the plaintiff.

In 1939 plaintiff first obtained oil production from the Lloyd Property.

Under the Internal Revenue Code of 1939, as amended, 26 U.S.C. §§ 23(m), 23(n), and 114(b) (3), plaintiff was entitled to a reasonable allowance for depletion of its mineral deposits, including the Shell-Lloyd and Lloyd Properties.

In its federal income tax returns for the calendar years 1939 through 1944 plaintiff consistently treated the Shell-Lloyd Property as a single merged depletable "property" for the purposes of the depletion deductions authorized by the above-mentioned provisions of the Internal Revenue Code (I.R.C.). Plaintiff did the same with respect to the Lloyd Property. However, upon audit of plaintiff's federal income tax returns for the calendar years 1942, 1943 and 1944, the examining agent took the position that plain-

tiff had acquired a separate fee interest and a separate leasehold interest in each of the properties, and declared that each of these interests must be treated as a separate depletable property for the purpose of computing the depletion deduction to which plaintiff was entitled. As a result, on its federal income tax returns for the calendar years 1945 through 1958, the plaintiff computed its depletion deduction as if it had a separate fee interest and a separate leasehold interest in each of the properties. Then, on audit of plaintiff's federal income tax return for the calendar year 1958, the examining agent took the position that the separate property treatment was improper. He indicated that the plaintiff should treat its interest in the Shell-Lloyd Property as a single merged depletable "property", and that it should do likewise as to the Lloyd Property. As a result of this plaintiff was refunded $31,426.94 of the income taxes previously assessed and collected from it for the calendar year 1958.

Thereafter, within the proper time, plaintiff filed claims for refund of its 1956 and 1957 taxes, in part, on grounds that the Shell-Lloyd and Lloyd Properties should each be treated as a single "property" for depletion purposes. Defendant rejected and disallowed these claims, and plaintiff brought this action to recover taxes paid in those years.

■ Plaintiff is entitled to commence this action by reason of its compliance with 26 U.S.C. §§ 6532(a) and 7422(a), and jurisdiction is established under 28 U.S.C. § 1331 and § 1340.

The plaintiff has elected to have its Shell-Lloyd and Lloyd Properties governed under 26 U.S.C. § 614(d) which reads, in part: "In the case of oil and gas wells, any taxpayer may treat any property (determined as if the Internal Revenue Code of 1939 continued to apply) as if subsections (a) and (b) had not been enacted." (Subsection (a) generally defines property under the I.R.C. of 1954, and subsection (b) gives special rules as to operating mineral interests.)

■ At the outset plaintiff is met with defendant's contention that it falls di-

rectly within Treasury Regulation 1.614–4(b) which states:

> "If the taxpayer has treated properties in a manner consistent with the rules contained in paragraph (a) of this section for taxable years to which the Internal Revenue Code of 1939 applies and if the taxpayer desires to treat such properties under section 614(d), then such properties must continue to be treated in the same manner."

Section 1.614–4(a) states rules which are unfavorable to plaintiff's position, and which, in effect, reflect the position which had been taken by the Internal Revenue Service with respect to plaintiff's returns from 1944 through 1957.

The plaintiff did treat its properties in a manner consistent with Regulations Section 1.614–4(a) during the years to which the I.R.C. of 1939 applied, but the plaintiff had been required to do so because of the view the Internal Revenue Service was then taking. Regulations promulgated under the 1939 Code and the judicial decisions thereon do not necessarily lead to the conclusion that the plaintiff has separate properties, which cannot be treated as a single property. Especially since there is this doubt as to whether the separate property treatment of plaintiff's interests was correct, it would seem to be unreasonable to interpret section 1.614–4(b) to mean that plaintiff must continue to be treated in accord with a view of the 1939 Code and Regulations which it asserts is erroneous even though it did not voluntarily treat its properties that way in the first place. The defendant's assertion that the prior compulsion now begets a waiver must be rejected.

■ It is clear that plaintiff did not elect to have its interests treated as separate. 10 Mertens § 60.19 (1958) states: "The doctrine of election implies that a taxpayer is given the option of freely taking two courses of action; where there is no freedom of choice and the election is by compulsion, the rule is inapplicable." And in Interstate Financial Corp. v. United States, 160 F.Supp. 534, 537 (N.D. N.Y., 1958) the court said: "The compulsion of a policy of the Bureau (of Internal Revenue) cannot be considered as an election; neither does it constitute an estoppel."

In the same year as Interstate, Island Creek Coal Co. v. Commissioner, 30 T.C. 370 (1958) was decided. There the taxpayer was engaged in running mines on a certain piece of property and had treated its interests therein as one property for depletion purposes for six years. Then the Commissioner insisted that it treat its interests as separate. It did so for twelve years, but always under protest. When it attempted to change back to treating its property as a single "property" the Commissioner claimed that under Regulations 111 section 39.23(m)–1(i) the taxpayer must be consistent and must continue to treat its properties as separate. The court held that the requirement of consistency was for the purpose of precluding a taxpayer from electing the method most advantageous to itself each year, and that here it was less advantageous to the taxpayer to treat its properties as separate. Thus, the court held that the taxpayer could not be said to have made an election which would preclude it from later reasserting its claim that it had a single property.

In the case before the Court there is no indication whether it was to the plaintiff's advantage or not to treat its interests in its properties as separate during all of the years from 1944 through 1958. However, at least in 1956, 1957 and 1958 it was less advantageous to the plaintiff. Thus, it does not appear that the plaintiff was merely changing its mind to suit its own convenience. At first plaintiff asserted that Shell-Lloyd and Lloyd were each a single property, and now, since 1958 when the Commissioner appeared to have changed his views, the plaintiff is reasserting its original position.

■ Treasury Regulation 1.614–4(b) should be construed to refer to a taxpayer who has voluntarily treated properties in the manner indicated therein. The

plaintiff did not voluntarily so treat its Shell-Lloyd Property and its Lloyd Property. Therefore, the fact that plaintiff treated its Shell-Lloyd Property as two properties and its Lloyd Property as two properties during the years to which the I.R.C. of 1939 applied, will not now preclude it from contending that each should have been and should now be treated as a single property.

Where the Shell-Lloyd Property and the Lloyd Property each one "property" for purposes of the I.R.C. of 1939 and the Regulations thereunder? The agreed statement of facts indicates that as to both the Shell-Lloyd Property and the Lloyd Property the plaintiff was a lessor who held a non-operating interest (the net royalty interest) and, after the assignment of the lease to it, was lessee of the same property and held the operating interest. Plaintiff asserts that it is not good common sense to say that one man is lessee and lessor of the same property at the same time. At first blush that certainly seems true.

■■ The early common law was unequivocal in stating that when a smaller estate and a larger estate came into the same hands, assuming no estate intervened, there was a merger of the smaller into the larger. The smaller estate was said to be annihilated or merged in the larger. See E. g. II Blackstone's Commentaries 177 (15th ed., 1809). This same general view has been accepted and followed in California, where the transaction in question took place and where the land is located. In fact, the California Civil Code, § 1933 expresses this idea by stating: "The hiring of a thing terminates: * * * 3. By the hirer acquiring a title to the thing hired superior to that of the letter; * * *" The California cases have expressed a similar view. E.G., Buell v. Simon Newman Co., 61 F.Supp. 157 (N.D.Cal., 1945), affirmed, 154 F.2d 35 (9th Cir., 1946); Vucinich v. Gordon, 51 Cal.App. 2d 434, 124 P.2d 868 (1942); Erving v. Jas. H. Goodman & Co., Bank, 171 Cal. 559, 153 P. 945 (1915); Higgins v. California Petroleum & Asphalt Co.,

109 Cal. 304, 41 P. 1087 (1895); and Gaskill v. Trainer, 3 Cal. 334 (1853). Therefore, it seems clear that the doctrine of merger applies in California. Since nothing is shown which would preclude a merger of the plaintiff's interests in the Shell-Lloyd Property, as a matter of California law there was a merger and plaintiff holds a single property.

However, the evidence raises a question as to the Lloyd Property. At the same time as the assignment of the lease from Property Service Corp. to plaintiff, executed on December 20, 1937, the plaintiff entered into an agreement with South Basin which reads, in part: "For valuable consideration, * * * lessors in the lease above described, hereby agree that the above assignment shall not constitute or effect a merger of estate between Lloyd Corporation, Ltd. as one of said lessors and as an assignee of the original lessee." Here plaintiff has not only indicated an intent that the two interests not merge, but it has contracted to that effect. Therefore, the question raised is whether such an intent can be effectual under California law.

51 C.J.S. Landlord and Tenant § 256 states that if a lessee purchases the lessor's interest there will be no merger if the intent is that merger shall not take place. This view is followed in many states, and one supposes that the same rule would be applied if the lessor purchased the lessee's interest. In the case of Mobley v. Harkins, 14 Wash.2d 276, 128 P.2d 289, 291, 143 A.L.R. 88 (1942) the court said:

"It was an inflexible rule at common law that a merger always took place when a greater and a lesser estate met in the ownership of the same person without any intermediate estate, but modernly the doctrine of merger is not favored either at law or in equity. Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place * * *

nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons."

California does not appear to have passed on the question of whether "intent" can preclude a merger. However, Bailey v. Richardson, 66 Cal. 416, 422, 5 P. 910, 914 (1885), did refer to intent when considering the relation between a lessor and a sublessee where the lessee had assigned his interest to the lessor. The court said: "Under these circumstances the (lower) court was justified in finding that Richardson came in as assignee of the reversion of plaintiff's lessor, and not as owner of the fee. There was no merger, because he *elected* to keep the two estates separate." (Emphasis supplied) Accord, Standard Oil Co. v. Slye, 164 Cal. 435, 129 P. 589 (1913).

Although it is unquestionable that logic and symmetry seem to point toward a result where one person cannot be lessor and lessee of the same piece of property at the same time, these considerations need not be inexorable. A corporation may have a good reason to hold as both lessor and. lessee, and, on principle, there seems to be no reason to prevent it if that intent is clearly shown.

■ Thus, here, plaintiff and South Basin made a lease of the Lloyd Property to a corporation in which plaintiff owned 98.5% of the issued and outstanding capital stock. Within two months that corporation assigned the lease to plaintiff. This would seem to furnish some evidence of a desire to create a leasehold estate which plaintiff would ultimately hold. But, more importantly, on the very assignment paper and at the same time plaintiff agreed with South Basin that there should be no merger of estates. This demonstrates plaintiff's intent. Furthermore, South Basin would be deprived of its bargain if a merger is held to have occurred. Because of this and despite plaintiff's later and current claims of merger, it should be said that as a matter of general California law the estates in the Lloyd Property did not merge.

It has been said that for purposes of the depletion allowance the status of title under technical common law rules will not be controlling, but rather "economic interests" will be looked to. Thus, in Palmer v. Bender, 287 U.S. 551, 555–556, 53 S.Ct. 225, 226, 77 L.Ed. 489 (1933) the court said:

"It has been elaborately argued at the bar and in the briefs whether under Louisiana law the two instruments are assignments or subleases. We do not think the distinction material. Nothing in § 214(a) (10) indicates that its application is to be controlled or varied by any particular characterization by local law of the interests to which it is to be applied. * * * We look to the statute itself and to the decisions construing it to ascertain to what interests it is to be applied and then to the particular interests secured to the two partnerships by the instruments. in question to ascertain whether they come within the statutory provision. The formal attributes of those instruments or the descriptive terminology which may be applied to them in the local law are both irrelevant."

This same test for determining whether or not a taxpayer has an interest entitling him to a depletion allowance has. been followed in later cases. See Helvering v. Bankline Oil Co., 303 U.S. 362,. 58 S.Ct. 616, 82 L.Ed. 897 (1938); and Commissioner v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed.. 347 (1956). Therefore, it is important. to look to the interpretations of the I.R.C. of 1939 to see what view was taken of situations similar to plaintiff's.

"Property" was not defined in the I.R. C. of 1939 so the Commissioner promulgated Regulations giving the word content. In Regulation 118, section 39.23. (m)–1(i) (also Regulation 111 section 39.23(m)–1(i)) it is said: " 'The property' * * * means the interest owned by the taxpayer in any mineral property. The taxpayer's interest in each separate mineral property is a separate 'property' * * * ."

This Regulation was construed in G.C. M. 22106, 1941–1 C.B. 245 where it was said at page 245:

"The term 'property' * * * means each separate interest owned by the taxpayer in each separate tract or parcel of land, whether separated geographically or by conveyancing. If a taxpayer holds several different interests in the same tract, each interest is a separate property."

And at page 247:

"Separate 'tracts' or 'parcels' of land not only exist when two areas or pieces of land are separated geographically, but a single 'tract' or 'parcel' of land may be divided into two or more separate 'tracts' or 'parcels' by means of conveyances or leases carving up the original 'tract' or 'parcel'. If a taxpayer holds several interests in the same tract or parcel, each interest is a 'property' within the comprehension of that term as used in the provisions of the Revenue Acts fixing a basis for the computation of depletion. As the basis fixed also governs the computation of gain or loss, it follows that a depletable 'property' is also an asset subject to sale or other disposition giving rise to gain or loss. Accordingly, each such interest must be treated as a *separate* 'property' for income tax purposes. Failure to treat each separate interest as a separate property would disregard or unduly confuse administration of the provisions of the Revenue Acts requiring the computation of gain or loss upon the sale of an asset and the provisions distinguishing between ordinary gain or loss and capital gain or loss, taxable at different rates, depending upon the length of time the asset was held."

Finally, in Example III at page 248, it was stated that when a lease terminates full ownership revests in the lessor and his interest therein is a *single* new "property".

But in G.C.M. 24094, 1944 C.B. 250, which basically reiterated the reasoning of G.C.M. 22106, the General Counsel took the position that once the landowner has made a lease of part of the property even if he reacquires the lease, so that he holds both lease and reversion, there will be no merger of interests for tax purposes. This though the separate legal identity has been destroyed. Example III of G.C.M. 22106 was modified to reflect this new viewpoint.

This established the viewpoint of the Commissioner as to "property", and is what the taxing authorities insisted upon in the audit of plaintiff's federal income tax returns for 1942, 1943, and 1944.

Although this interpretation is entitled to weight, one must look to the cases to see if these G.C.M.'s can draw support from them.

In Vinton Petroleum Co. of Texas v. Commissioner, 71 F.2d 420 (5th Cir.), cert. denied, 293 U.S. 601, 55 S.Ct. 118, 79 L.Ed. 694, rehearing denied, 293 U.S. 633, 55 S.Ct. 239, 79 L.Ed. 717 (1934) the taxpayer produced oil from eight different but neighboring tracts of land which were acquired at different times, some in fee simple, some under leases. The court referred to Regulation 69, article 221, which provided that, "[i]n general, 'the property' * * * refers to the separate tracts or leases of the taxpayer." The court then said that this was a reasonable and practical regulation, and that Congress had not seen fit to override it. Without further discussion, the court stated that taxpayer came within the Regulation and must therefore treat each tract separately. Since by 1941 the Regulations no longer spoke in terms of "separate tracts or leases", and since the court gave no principled discussion of its reasoning, this case does not seem to be a very potent authority. Nevertheless, it was relied upon by the above-mentioned G.C.M.'s.

In Turbeville v. Commissioner, 31 B.T. A. 283, affirmed on other grounds, 84 F.2d 307 (5th Cir.), cert. denied, 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428 (1936) it was held that where the taxpayer had made several leases covering various portions of her tract of land she could no

longer treat the tract as one property, but had created a separate "property" in each parcel of land covered by a lease. Again, no discussion of the court's reasoning was given. This case was also relied upon by the G.C.M.'s.

Sneed v. Commissioner, 119 F.2d 767, (5th Cir.), rehearing denied, 121 F.2d 725 (5th Cir.), cert. denied sub nom. Thompson v. Helvering, 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941), also relied upon in the above-mentioned G.C.M.'s presented a set of facts quite similar to Turbeville. The taxpayer had given leases on various parts of his large tract of land. The court held that by reason of giving the leases the taxpayer had separated his tract into separate "properties". However, again, the court was construing old Regulation 69 article 221, and not the newer Regulation which is cited above. Furthermore, the court said that the taxpayer had treated the leases as separate properties. Thus, no aggregation of them would be permitted.

Some other cases which have declared against allowing a merger of numerous interests into one single property are: Helvering v. Jewel Mining Co., 126 F.2d 1011 (8th Cir., 1942) (where two mines were operated on a single tract of land, one taxpayer's and one his sublessee's, the court said at page 1013 of 126 F.2d, "[e]ach separate coal mine independently operated by its owner constitutes a separate property".); Berkshire Oil Co. v. Commissioner, 9 T.C. 903 (1947) (where the taxpayer took a single lease of four lots of land, two of which were contiguous, he took three separate properties and not just one. But note that the contiguous lots were treated as one property.); and Estate of Bryan v. Commissioner, 34 T.C. 501 (1960); affirmed, 290 F.2d 807 (4th Cir., 1961) (where properties which were geographically widely separated could not be treated as a single property.).

Although the above cases form a line of authority declaring against a merger of interests into one "property" none of them present factual situations very similar to the one presented by the plaintiff.

However, many cases have allowed a kind of merger in cases analogous to plaintiff's.

Thus, in Mascot Oil Co. v. Commissioner, 29 B.T.A. 652 (1933) it was stated that giving a sublease of land below a depth of 1600 feet did not sever that land so as to create a new "property" for depletion purposes.

And in Cree v. Commissioner, 47 B.T.A. 868 (1942) taxpayers held the operating interest in two oil properties and also held various rights to participate in the working interests. These participating interests entitled the holder to a percentage of proceeds realized from the sale of oil and gas from the properties. The taxpayers claimed that they held several interests and therefore had several "properties". They cited G.C.M. 22106 for the proposition that a single parcel could be divided into many parcels by making leases. In answer the court said at page 872 of 47 B.T.A.: "we do not think the idea soundly applied here, where the whole leasehold is acquired by one formerly owning certain limited rights with respect thereto * * *." The court continued:

> "no essential difference is seen between lease and participating interest, and when petitioners acquired the leaseholds, as well as the fractional interests in rights thereunder sold by the lessee, there was effected a merger of interests, so far as the petitioners were concerned * * *. The rights to participation were merged with the leasehold in which they participated. We see nothing to prevent such a merger * * *."

And at page 873 of 47 B.T.A.:

> "the lessee cannot logically present a participating right or charge against himself as giving him a different status for purposes of computation of depletion."

Black Mountain Corp. v. Commissioner, 5 T.C. 1117 came before the Tax Court in 1945. There the taxpayer had acquired various contiguous properties over a period of years. The Commissioner, relying

on G.C.M. 22106 argued that each separate acquisition of lands constituted a separate property, and specifically mentioned the administrative difficulties referred to therein. The court replied at page 1120 of 5 T.C.:

> "This argument is not without force, but it is apparent that the difficulties would be as great or greater under this contention as they would be under the petitioner's contention.
> "The petitioner contends that 'the property' * * * means the economic and practical unit which the taxpayer must use and develop in order to extract a particular block of coal. It includes whatever portion of the mineral deposit can be properly mined as a unit and it includes also the development, plant, and surface land necessary for extraction of that particular block of coal. Under this theory a large block of coal acquired at one time might constitute more than one property, or smaller blocks of coal acquired at different times might combine to form a single property.
> "The regulations and decided cases support the petitioner's contention."

And at pages 1121–1122 of 5 T.C., the court said, "separate acquisitions can, under proper circumstances, be combined to form one property * * *."

For other cases which allowed treatment as one property see: Cresson Consolidated Gold Mining and Milling Co. v. Commissioner, 11 T.C. 192 (1948) (where taxpayer gave leases to others to take gold out of taxpayer's mine but exerted great control over the lessees, the court found that the taxpayer still had a single property.); Amherst Coal Co. v. Commissioner, 11 T.C. 209 (1948) (where the taxpayer acquired its lands in numerous transactions over a period of years, but mined them as one economic operation the court inclined toward holding that the taxpayer had one "property" but did not find it necessary to do so.); and Hanna Iron Ore Co. v. Commissioner, 12 T.C.M. 405 (1953) (where taxpayer operated a mine as a single unit on lands acquired in different transactions over a period of years it had a single "property".).

From this discussion of the cases it is apparent that none have declared the common law doctrine of merger to be inapplicable in depletion allowance situations. One has expressly allowed a merger and some have even allowed separate acquisitions of lands to be merged into one "property" for depletion purposes. Furthermore, the notion of administrative convenience was squarely rejected in one case and was impliedly rejected in others.

Therefore, since the concept of merger is quite reasonable and since there is no authority (in the cases) holding it to be inapplicable for purposes of the depletion allowance, it should be applied as to plaintiff's interests.

Thus, plaintiff's Shell-Lloyd Property should be treated as a single merged depletable property.

But, as to the Lloyd Property, a different situation presents itself. There, as stated (supra), there was no common law merger.

In 1941 a similar case came before a federal court. This was Badger Oil Co. v. Commissioner, 118 F.2d 791 (5th Cir.), cert. denied, 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509, rehearing denied, 314 U.S. 712, 62 S.Ct. 294, 86 L.Ed. 567 (1941). In Badger the taxpayer had an oil lease on Texas lands and later acquired title to the fee in the same land. The taxpayer then transferred the lease to another party but claimed he still had a depletable interest therein since there had been a merger of the lease into his fee estate. The court said at page 792 of 118 F.2d:

> "The entire title to the minerals thus never vested in the taxpayer. But if it had, the interests separately acquired could be maintained unmerged if so intended and desired. (numerous Texas cases cited) The Board has found as a fact that no merger was intended, and the formal transfer within a few months of the lease as still existing abundantly proves it."

Thus, because of taxpayer's intent, which was proved by actions rather than express declarations, the court held that no merger had occurred and proceeded accordingly.

It may be argued that this is not a view comporting with economic reality, but that seems incorrect. Either "merger" or "non-merger" might well comport with economic reality, depending on the facts of the case at hand. Also, this will not open the door to sham transactions, for the Commissioner can look through such shams.

Where the plaintiff, for its own good reasons, has intended and contracted to keep its estates separate and unmerged it should not later be able to insist that it has a single merged property for depletion purposes.

The parties are directed to make the necessary computations under Rule 7(h) of the Rules of this Court.