LLOYD CORPORATION, Ltd., a corporation, Appellant,

v.

R. A. RIDDELL, District Director of Internal Revenue, Los Angeles District, Appellee.

R. A. RIDDELL, District Director of Internal Revenue, Los Angeles District, Appellant,

v.

LLOYD CORPORATION, Ltd., a corporation, Appellee.

No. 19181.

United States Court of Appeals
Ninth Circuit.

June 21, 1965.

Joseph D. Peeler, Stuart T. Peeler, Peter C. Bradford, Musick, Peeler & Garrett, Los Angeles, Cal., for appellant and cross-appellee (Lloyd Corp.).

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Ralph A. Muoio, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Los Angeles, Cal., for appellee and cross-appellant (District Director).

Before POPE, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

Appellant has brought this action for refund of a portion of corporate income tax for the years 1956 and 1957. The case arises out of a dispute as to the proper method of computing the depletion allowance to which appellant is entitled with respect to certain oil and gas properties. The Code sections and Regulations bearing on this dispute are set forth in the margin.[1]

---

1. Sec. 611. ALLOWANCE OF DEDUCTION FOR DEPLETION.

(a) *General Rule*—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. * * *

[26 U.S.C. § 611]

Sec. 613. PERCENTAGE DEPLETION.

(a) *General Rule.*—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * *

(b) *Percentage Depletion Rates.*—The mines, wells, other natural deposits, and the percentages, referred to in subsection (a) are as follows:

(1) 27½ percent—oil and gas wells. * * *

[26 U.S.C. § 613]

Sec. 614. DEFINITION OF PROPERTY.

(a) *General Rule.*—For the purpose of computing the depletion allowance in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land.

*    *    *    *    *

(d) *1939 Code Treatment With Respect to Operating Mineral Interests in Case of Oil and Gas Wells.*—In the case of oil and gas wells, any taxpayer may treat any property (determined as if the Internal Revenue Code of 1939 continued to apply) as if subsections (a) and (b) had not been enacted. If any such

During the years in question taxpayer had interests in two properties. As to one (which we shall designate as the "Lloyd property"), it owned an undivided one-half interest in the fee (the other half being owned by South Basin Oil Company) and the entire interest in a lease of the property. As to the other (which we shall designate as the "Shell-Lloyd property"), it owned a one-half interest in the fee (the other half being owned by South Basin Oil Company) and a one-half interest in a lease of the property (the other half being owned by Shell Oil Company).

The question presented is whether the two interests possessed by the taxpayer in both properties (that is, the leasehold and the royalty interests), may be combined by the taxpayer and treated as a single property for percentage depletion purposes, or whether, as the District Director claims, the depletion allowance must be computed on the income of each interest separately.

The District Court held [2] that if, under California state law, the interests merged, then a single depletable interest resulted. As to the Lloyd property it held that no merger had resulted under state law since, by agreement between taxpayer and its co-owner, it appears that the parties had agreed that there would be no merger. From this ruling the taxpayer has appealed. As to the Shell-Lloyd property, the District Court held that a merger resulted. From this ruling the District Director has taken a cross-appeal.

Both parties agree that California state law of merger should not control. They disagree as to what the federal law is.

Taxpayer argues that we should look through form to substance and ascertain the true nature and extent of the economic interests in the properties. When this is done, it is argued, it is perfectly clear that as to the Lloyd property taxpayer owns the entire fee operating interest, subject only to a royalty interest in its co-owner; that as to the Shell-Lloyd property it has a one-half operating fee interest. It is contrary to the economic realities, it asserts, to resort to the fiction that it is paying royalties to itself and that it enjoys royalty income that in fact it never received.

The Government contends that what taxpayer has done is to aggregate for depletion purposes operating and non-operating interests [3] in the properties, contrary to the law applying to percentage depletion; that that law and the principles upon which it is founded cannot be defeated by what is, in effect, a resort to the doctrine of merger of estates.

It is conceded that under section 614(d) taxpayer can [despite the defini-

treatment would constitute an aggregation under subsection (b), such treatment shall be taken into account in applying subsection (b) to other property of the taxpayer.

[26 U.S.C. § 614]

Treasury Regulation, § 1.614–4: *Treatment under the Internal Revenue Code of 1939 with respect to separate operating mineral interests in the case of oil and gas wells.*

(a) *General rule.* In the case of oil and gas wells, a taxpayer may treat under section 614(d) and this section any property as if section 614(a) and (b) had not been enacted. For purposes of this section, the term "property" means each separate operating mineral interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land. Separate tracts or parcels of

land exist not only when areas of land are separated geographically, but also when areas of land are separated by means of the execution of conveyances or leases.

\*     \*     \*     \*     \*

2. The opinion of the District Court is reported at 222 F.Supp. 587 (S.D.Cal. 1963).

3. An "operating" interest is defined as "an interest in respect of which the costs of production of the mineral are required to be taken into account by the taxpayer for purposes of computing the 50 percent limitation" for percentage depletion purposes. Int.Rev.Code of 1954, § 614(b)(3). A "nonoperating" interest includes only interests which are not operating interests, e.g., a royalty interest. Int.Rev. Code of 1954, § 614(c)(2).

tion of property set forth in section 614(a)] aggregate or combine more than one interest if such aggregation was permissible under the 1939 Code. The District Court ruled that taxpayer had effectively elected to come under the 1939 Code provisions, pursuant to section 614(d), and that ruling is not challenged here. The 1939 Code does not specifically define property, and the parties are in dispute as to whether operating and nonoperating interests could be combined under those Code provisions. This dispute we need not resolve. We are satisfied that section 614(d) applies only to an aggregation of operating interests. That such was Congressional intent appears not only from the language of the Code subheading [4] but from legislative history.[5] Treasury Regulation 1.614–4, a reasonable interpretation of the Code in this respect, expressly provides that the "property" allowed under the section 614(d) option is " * * * each separate *operating* mineral interest * * " (emphasis added).

We conclude that under the 1954 Code operating and nonoperating interests may not be combined.

■ Appellant argues that it has not resorted to an aggregation or combination of interests in this respect since its interest is a single one, without benefit

of such aggregation, under the doctrine that the true economic interest shall control.

In this area, however, that doctrine has been limited by statutory rule, which in effect, renders operating and nonoperating interests, by virtue of the differing characteristics, separate and distinct economic interests.[6] The sole question, in our judgment, is whether separate operating and nonoperating interests of the taxpayer actually exist.

■ We conclude that they do so exist here, where, in both cases, those interests are delineated by an existing lease under which the properties are operated. In the case of the Lloyd property the continued existence and vitality of the lease is due to the existence of an owner-lessor interest in South Basin separate from the interests of taxpayer. In the case of the Shell-Lloyd property it is due to the existence of both South Basin's lessor and Shell's lessee interest separate from those of taxpayer's.[7] This being so, such existing interests of the taxpayer may not be combined.

As to the Lloyd property, upon the appeal of Lloyd, judgment is affirmed. As to the Shell-Lloyd property, upon the cross-appeal of the District Director, judgment is reversed.

---

4. See § 614(d) cited note 1, supra.

5. The Senate Report on § 614(d) stated: " * * * section 32 of the House bill has been retained as section 614(d) of the Code, in so far as it relates to the treatment of *operating* mineral interests in the case of oil and gas wells" (emphasis added). S.Rep. No. 1983, 85th Cong., 2nd Sess. 185 (1958), U.S.Code Cong. & Admin. News 1958, p. 4974.

6. Lloyd's reliance upon our decision in Grimes v. United States, 295 F.2d 623 (9th Cir. 1961), is misplaced. There we were not concerned with the concept of separate operating and nonoperating "properties" under the 1954 Code and the Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606 (1958), but with the concept of "gross income from mining" under Regulations relating to § 114(b) of the 1939 Code. The question

was not what kind of interest was held, but who had it.

7. In Badger Oil Co. v. Commissioner of Internal Revenue, 118 F.2d 791, 792 (5th Cir. 1941), cert. denied, 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509 (1941), it is stated:

"We think it clear that the Martin lease was never extinguished by merger. When the taxpayer in 1934 acquired the lessors' interests it did not acquire the entire fee in the minerals, because one-third of an eighth interest in them was outstanding in others. These others had a right to receive one-third of the royalty under this very lease, and to have it remain in force. Their deeds * * * gave them title to fractional interests in the minerals in place, though this lease should come to an end. The entire title to the minerals thus never vested in the taxpayer."